## HIGGINS v. TALTY, Judge, et al.

### In Banc, June 19, 1900.

1. **Intoxicating Liquors:** LICENSE: EXCISE COMMISSIONER. No person has the right to sell intoxicating liquors in this State as a dramshop keeper, without having a license from the proper authority authorizing him to do so, and in the city of St. Louis the exclusive authority to grant such licenses is vested in the excise commissioner.

2. **Dramshop Licenses:** NOT PROPERTY: REVOCATION: JUDICIAL POWERS: INJUNCTION: PROHIBITION. A dramshop license is a mere permit, is not a contract between the State and the licensee in which the latter has vested rights, but is subject at all times to the police powers of the State government, and may be revoked at any time it may see proper to do so for any violation of the laws governing dramshops, whether the licenses so provide or not, and under the statute, in the city of St. Louis, the excise commissioner has authority to revoke a license of a dramshop keeper who is keeping and conducting a disorderly and disreputable dramshop, and his action in doing so is not the exercise of judicial power, nor can he be enjoined by the circuit court from exercising such authority, and this court will prohibit any attempt by the circuit court to enforce such injunction.

3. ————: REVOCATION: TERMS STIPULATED BY STATUTE. Where the statute gives an officer authority to revoke a license by him granted if the dramshop keeper shall violate any of the laws governing dramshops, such statute is as much a part of the license as if copied into it.   And in such case the licensee must be held to have accepted his license upon the terms and conditions prescribed in the statute.

*Prohibition.*

WRIT AWARDED.

*Edward C. Crow,* Attorney-General, and *Kimbrough Stone* for plaintiff.

(1) Prohibition will lie only where the act to be restrained is judicial or quasi-judicial, in its nature. State ex rel. v. Clark Co. Court, 41 Mo. 44; Hockaday v. Newson, 48 Mo. 196; High on Extraordinary Legal Remedies, sec. 764a. (2) Prohibition will be used where there has been an excessive use of jurisdiction. State ex rel. v. Hirzel, 137 Mo. 447; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Withrow, 133 Mo. 500; State ex rel. v. Elkin, 130 Mo. 90. (3) This is a question in which public morals and public welfare demand immediate settlement. Any other means would not afford adequate relief. Even where there are other remedies, and we do not admit that there are here, prohibition will lie where those remedies will not afford adequate relief. State ex rel. v. Hirzel, 137 Mo. 435; Railroad v. Wear, 135 Mo. 230; State ex rel. v. Withrow, 135 Mo. 530; State ex rel. v. Johnson, 132 Mo. 105; State ex rel. v. Elkin, 130 Mo. 109; Trainer v. Porter, 45 Mo. 336. (4) In dramshop matters the county court acts judicially. State v. Evans, 83 Mo. 319; State ex rel. v. Holt Co., etc., 39 Mo. 521; State ex rel. v. Cauthorn, 40 Mo. App. 94; State ex rel. v. Heege, 37 Mo. App. 338. (5) The excise commissioner has exclusive right to issue and revoke dramshop licenses in St. Louis. He therefore succeeded to the powers exercised before 1893 by the St. Louis officials, and hence stands in the place of a county court so far as dramshop licenses are concerned. State ex rel. v. Hudson, 13 Mo. App. 61. (6) He exercises a judicial function in granting licenses. State ex rel. v. Higgins, 71 Mo. App. 180; State ex rel. v. Hudson, 13 Mo. App.

61.    (7)    Powers necessary to make granted powers effective are presumed.    State ex rel. v. Walbridge, 119 Mo. 383.

*Orville T. Smith* for defendant Roselli.

(1)    The legislature could not invest the excise commissioner with judicial power.    Const., art. 6, sec. 1.    (2) The duties imposed by the act creating the office of excise commissioner are not judicial, but purely ministerial.    State ex rel. v. Lesueur, 103 Mo. 253; State v. Hathaway, 115 Mo. 37; Flourney v. City, 17 Ind. 169; Nicholson v. Thompson, 5 Rob. 367.    (3)    It can not be maintained that the excise commissioner of the city of St. Louis possesses the judicial power and jurisdiction of the county court, because as to the city of St. Louis such court is abolished and its jurisdiction extinguished by the organic law.    Const., art. 4, sec. 24; State ex rel. v. Laughlin, 75 Mo. loc. cit. 153-155.    (4)    If the excise commissioner was attempting to usurp a judicial function, then the proper remedy was by petition to the circuit court for a writ of prohibition.    R. S. 1899, sec. 4448; Railroad v. Wear, 135 Mo. 230; State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Elkin, 130 Mo. 90; State ex rel. v. Scarritt, 128 Mo. 331; Peo. ex rel. v. Nichols, 79 N. Y. 592; Braize v. County Com'rs., 25 W. Va. 213.

*Edward C. Crow,* Attorney-General, for plaintiff in reply.

(1)    A license to sell liquor is neither a contract nor a right of property within the legal and constitutional meaning of these terms.    It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State.    Hence, an authority which granted a license always retains the power to revoke it either for due cause of forfeiture or upon a change of policy and legislation in regard to the liquor traffic.    And such rev-

ocation can not be pronounced unconstitutional either as an impairment of contract obligation or as unlawfully divesting persons of their property or rights. Neither the State nor any of its agencies can, or ever does, surrender a power to regulate and control the traffic in liquor because that is a branch of its police power and is inalienable. Black on Intoxicating Liquors, secs. 127, 189; Brown v. State, 88 Ga. 224; Commonwealth v. Brennan, 103 Mass. 170; 11 Neb. 547; 43 Iowa, 514.   (2)   The fact that a person has been licensed to sell intoxicating liquor does not give him a vested right to the continuance of his traffic in such liquors in any such sense that it can not lawfully be abridged or abrogated by subsequent legislation enacted in the exercise of the police power and for the benefit of the interests of society. Black on Intoxicating Liquors, sec. 128; 68 Ill. 444; 64 Miss. 188; 42 Md. 71; 20 Amer. Reps. 83; 34 N. Y. 659.   (3)   The legislature can confer upon the excise commissioner of St. Louis, power to investigate alleged violation of excise law by a person holding a license from him, and to revoke such license if he finds that the law has been violated. Voight v. Excise Commissioners of Newark, 37 Lawyer's Reps. Ann. 293; Sherlock v. Stuart, 21 Lawyer's Reps. Ann. 580; People v. Brooklyn Police and Excise Commissioners, 59 N. Y. Reps. 96; Spelling on Extraordinary Relief, secs. 628, 623, 624, 625, 626.   (4)   It is not necessary that proceedings for revocation of a license, based upon violation of excise laws by licensee, be stayed until after indictment, trial and conviction of offender in criminal court for such violation. The excise commissioner of St. Louis has the right to proceed to investigate whether or not a license, issued by him, has become forfeited by the holder thereof by violation of the excise law without waiting for the action of criminal courts. People v. Brooklyn Police and Excise Commissioners, 59 N. Y. 96.   (5)   If power to grant or revoke license is vested in

excise commissioner, his action in granting or revoking a license can not be controlled by injunction. Black on Intoxicating Liquors, sec. 176; Railroad v. Whalen, 3 Wash. Ter. 452; 17 Pac. Reporter 890. The proper remedy in such a case is by appeal, writ of error or *certiorari,* according to the nature of the error complained of. Black on Intoxicating Liquors, sec. 175. (6) By virtue of the act creating the office of excise commissioner, secs, 3019, 3020, 3021, R. S. 1899, he has the sole right to issue and revoke dramshop licenses in St. Louis, and succeeds to the powers existing prior to 1893, by the St. Louis city officials, and hence stands in the place of said officials so far as dramshop licenses are concerned. State ex rel. v. Hudson, 13 Mo. App. 61. (7) No court has jurisdiction to interfere, by injunction, with the public duties of any of the departments of the Government or to override a policy of the State; and a court of equity is without power to enjoin the exercise of the police powers given by law to officers of a municipal corporation so as to prevent such officers from preserving public peace and enforcing the police regulations. Chicago v. Wright, 69 Ill. 318; Ficke v. New York Police Commissioners, 66 How. (N. Y.) p. 318; Spelling on Extraordinary Relief, sec. 628. (8) Officers will not be interfered with by injunction in the exercise of a discretionary rather than a ministerial duty. Spelling on Extraordinary Relief, secs. 623, 624, 625, 617, 619; Gaines v. Thompson, 7 Wall. 347.

BURGESS, J.—The defendant Joseph Roselli is a resident of the city of St. Louis, and a keeper of a dramshop in said city under a license granted to him by the plaintiff as excise commissioner, on or about the first day of February, 1900. On April 4th, 1900, complaint in writing was made to plaintiff as excise commissioner by one P. M. Reynolds, a police officer of said city, that Roselli was keeping and con-

ducting a disreputable and disorderly dramshop, and was violating the statutes of the State governing dramshop keepers, whereupon plaintiff on the same day gave Roselli a written notice that he would hear said complaint and investigate the same on the 12th day of April, 1900, at the hour of 2:30 p. m. at the office of the plaintiff in said city.

On the 9th day of April, 1900, defendant Roselli applied for and obtained from the defendant, the Hon. John A. Talty, judge of the circuit court of the city of St. Louis, an order requiring the plaintiff to show cause on Thursday, April 12, 1900, at ten o'clock a. m., in division No. 7 of the circuit court of the city of St. Louis, why he should not be prohibited, restrained and enjoined from proceeding to exercise further jurisdiction or cognizance to try said Roselli upon the charge of violating the laws governing dramshops, or upon any other charge, and prohibited, restrained and enjoined him in the meantime from proceeding to exercise further jurisdiction or cognizance of said proceeding.

Thereafter, on the 11th day of April, 1900, plaintiff herein applied to and obtained from one of the judges of this court a writ of prohibition against the defendants Roselli and Talty, prohibiting them from further continuing said prohibitory proceeding against the excise commissioner, and requiring them to show cause before the Supreme Court in banc, on or before the 24th day of April, 1900, why the writ should not be made peremptory.

Defendant Roselli for plea to the temporary writ, alleges that it should not have been granted for the reason that the petition does not state any ground for the relief prayed for, and because under the Constitution and laws of this State plaintiff as excise commissioner of the city of St. Louis has not, and could not have, any jurisdiction, right or authority of law to try the issue of fact as to whether this defendant is or is not guilty of some violation of the laws of this State govern-

ing dramshops, or to exercise any judicial function what-
ever.

For his separate return to the order to show cause the
defendant, the Hon. John A. Talty, alleges that a peremp-
tory writ should not issue against him as judge of the cir-
cuit court, because said court has jurisdiction to inquire by
what authority said Higgins as excise commissioner is about
to take the alleged threatened action, inasmuch as such ac-
tion requires the exercise of judicial power by him.

The sections of the statute (R. S. 1899) under which the
license was granted, and under which the excise commissioner
was proceeding when prohibited from so doing are as fol-
lows:

"Sec. 3019. EXCISE COMMISSIONER'S OFFICE ESTABLISHED:
AUTHORITY: APPOINTMENT: TENURE. In all cities in this State
which now have or may hereafter have a population of 200,-
000 inhabitants or more, there is hereby created the office of
excise commissioner, who shall have exclusive authority to
grant dramshop licenses; and the commissioner shall be ap-
pointed by and hold his office during the pleasure of the Gov-
ernor.

"Sec. 3020. COMMISSIONER: GRANTING DRAMSHOP LI-
CENSE: PROCEEDINGS. Any person desiring a dramshop
license shall present a petition to the excise commissioner, as
required by the laws of this State, and if the petition is
signed by the requisite number of petitioners, and the appli-
cant is a person of good moral character, the commissioner
shall give to the applicant a statement in writing, that upon
the payment of the license tax required by law, a dramshop
license will be issued to such applicant.

"Sec. 3021. PAYMENT OF LICENSE TAX: RECEIPTS:
REVOCATION OF LICENSE. Upon receiving the statement
mentioned in section 3020 of this article, the applicant for
dramshop license shall pay to the city collector the amount

fixed by law as necessary to secure dramshop license, taking therefor duplicate receipts, one of which shall be filed with the city treasurer, and the other shall be filed with the excise commissioner, who shall then issue dramshop license to the applicant for the period provided by law; and the commissioner shall have authority to revoke any license by him, granted, if the dramshop keeper to whom license has been issued shall violate any of the provisions of the laws of this State governing dramshops."

The vital question presented by this record is whether the action which was about to be taken by plaintiff as excise commissioner with respect to the charges against Roselli was judicial. If so the Hon. John A. Talty had jurisdiction to issue the writ of prohibition, otherwise he had no power to do so.

No person has the right to sell intoxicating liquors in this State as a dramshop keeper, without having a license from the proper authority authorizing him to do so, and in the city of St. Louis the exclusive authority to grant such licenses is vested in the excise commissioner of the city. [Sec. 3019, *supra.*]

And such licenses when issued are merely permits, are not contracts between the State and the licensee, in which the latter has vested rights, but is subject at all times to the police powers of the State government, and may be revoked at any time that it may see proper to do so, for any violation of the laws governing dramshops whether licenses so provide or not, but in the case at bar that clause in the statute which provides that the commissioner shall have power to revoke any license by him granted if the dramshop keeper to whom license has been issued shall violate any of the provisions of the laws of this State governing dramshops, among which is that he shall at all times keep an orderly house (sec. 3012, R. S. 1899), is as much part of the license as if copied into

it, and the licensee must be held to have accepted his license upon these terms and conditions.

In the case of Metropolitan Board of Excise v. Barrie, 34 N. Y. loc. cit. 667, it was said: "These licenses to sell liquors are not contracts between the State and the persons licensed, giving the latter vested rights, protected on general principles and by the Constitution of the United States against subsequent legislation; nor are they property in any legal or constitutional sense. They have neither the qualities of a contract nor of property, but are merely temporary permits to do what otherwise would be an offense against a general law. They form a portion of the internal police system of the State; and are issued in the exercise of its police powers, and are subject to the direction of the State government, which may modify, revoke or continue them, as it may deem fit. If the act of 1857 had declared that licenses under it should be irrevocable (which it does not, but by its very terms they are revocable), the legislatures of subsequent years would not have been bound by the declaration. The necessary powers of the legislature over all subjects of internal police being a part of the general grant of legislative power given by the Constitution, can not be sold, given away or relinquished."

In Calder v. Kurby, 5 Gray 597, a license to sell intoxicating liquors, was granted for a definite period, but before the expiration of the time it was annulled, and it was claimed by the licensee that the license was a contract, and within the protection of the Constitution of the United States. But the court held otherwise, and in course of the opinion said: "The whole argument of the counsel for the plaintiff is founded on a fallacy. A license authorizing a person to retail spirituous liquors does not create any contract between him and the government. It bears no resemblance to an act of incorporation, by which, in consideration of the sup-

posed benefits to the public, certain rights and privileges are granted by the legislature to individuals, under which they embark their skill, enterprise and capital.   The statute regulating licensed houses has a very different scope and purpose. It was intended to restrain and prohibit the indiscriminate sale of certain articles deemed to be injurious to the welfare of the community.   The effect of a license is merely to permit a person to carry on the trade under certain regulations and to exempt him from the penalties provided for unlawful sales.   It therefore contains none of the elements of a contract. . . . . . . It is manifest that this statute, like those authorizing the licensing of theatrical exhibitions and shows, sales of fire-works and the like, was a mere police regulation, intended to regulate trade, prevent injurious practices, and promote the good order and welfare of the community, and liable to be modified and repealed, whenever, in the judgment of the legislature, it failed to accomplish these objects."

There are many decisions to the same effect.   [State v. Holmes, 38 N. H. 225; Fell v. State, 42 Md. 71; Beer Company v. Massachusetts, 97 U. S. 25; Stone v. Mississippi ex rel., 101 U. S. 814; Moore v. State, 48 Miss. 147; Columbus City v. Cutcomp, 61 Iowa 672; Powell v. State, 69 Ala. 10; Commonwealth v. Brennon, 103 Mass. 70.]

In the case of La Croix v. County Commissioners, 50 Conn. 321, it was held "that a license to sell intoxicating liquors, whether revocable in terms or not, is neither a contract nor property in any constitutional sense, but is subject at all times to the police powers of the State government."

In People ex rel. v. Wright, 3 Hun. 306, under a law in all of its salient features almost exactly like our own, the relators had been granted a license to sell intoxicating liquors by the board of commissioners of excise of the village of Delhi, and before the license expired, they were summoned

to appear before the boards granting the license to show why they should not be revoked for specified violations of the statute in regard to the sale of intoxicating liquors.   At the hearing the licensees made several objections to the right of the board to proceed, which were overruled.   On review of the proceeding before the commissioner, the Supreme Court held that under the law authorizing the board of excise commissioners to revoke the license granted to any person if they should become satisfied that he has violated any of the provisions of the act, the licensee was not entitled to trial by jury.

The same rule is announced in People ex rel. v. Coms. of Police, 59 N. Y. 92, in which it is also held that "the power to license the sale of intoxicating liquors, and to cancel such license when granted is vested in the legislature. . . . . . . . The mode and manner in which this shall be done rests in the discretion of that body."

In the recent case of Voight v. Board of Excise Commissioners, 59 N. J. L. 358, it was held that a statute regulating the sale of intoxicating liquors, which provides that if the holder of a license shall permit intoxicating liquors to be sold upon his premises contrary to law, his license shall thereby become forfeited, and that upon complaint of any three persons, residents and legal voters of the municipality wherein such licenses is used and exercised, verified by affidavit, being presented to the body that granted the licenses, alleging that such license had been forfeited, and specifying the acts complained of which shall be alleged to have worked such forfeiture, it shall be the duty of such body to proceed to an investigation, etc., that this statutory provision is not in contravention of the constitutional provision preserving the right of trial by jury, and that the licensing body have a right to proceed under it without waiting until the holder of the license has been indicted and convicted by the criminal

courts for his violation of the law. The proceeding was merely by way of investigation, and was in no sense a trial.

Roselli's license is not a contract with the State, nor property within the meaning of the Constitution, but is subject at all times to the police powers of the State government, by which it is provided that such licenses may be revoked by the excise commissioner for violation of the law and this without waiting until Roselli has been convicted by a court having jurisdiction for violation of the law, and, that in proceeding to do so he was not acting judicially, but under the power conferred upon him by statute with respect to subject-matter over which he has exclusive control.

Our conclusion is that the circuit court of the city of St. Louis had no jurisdiction whatever over the case, and that the writ of prohibition should be awarded as prayed. The costs of this proceeding are adjudged against the defendant Joseph Roselli.

All concur.