THE STATE, Appellant, v. SEEBOLD.

In Banc, January 23, 1906.

1. DRAMSHOP LICENSE: Power of Revocation: City of St. Louis. The excise commissioner in cities of 200,000 inhabitants or more has authority to revoke the license of a dramshop-keeper for keeping his dramshop open on Sunday.

2. ———: ———: ———: Disorderly House: Keeping Open on Sunday. The keeping of a disorderly house is not the only unlawful act for which the Excise Commissioner of St. Louis may revoke the license of a dramshop-keeper. He can revoke such license for a violation of "any of the provisions of the laws of this State governing dramshops."

3. ———: ———: ———: ———: ———: Conviction. The general statute (sec.3011, R. S. 1899) provides that any licensed dramshop-keeper who shall keep his dramshop open on Sunday, etc., "shall, upon conviction, be punished by a fine . . . shall forfeit such license, and shall not again be allowed to obtain a license," etc. The next section (sec. 3012, R. S. 1899) provides that whenever it shall be shown to the county court "that any dramshop-keeper has not at all times kept an orderly house," the court shall revoke his license. The statute creating the office of excise commissioner in cities of 200,000 or over, provides (sec. 3021, R. S. 1899) that "the commissioner shall have authority to revoke any license by him granted, if the dramshop-keeper to whom a license has been issued shall violate any of the provisions of the laws of this State governing dramshops." Held, that the authority of the excise commissioner to revoke the license of a dramshop-keeper in no way depends upon the fine or forfeiture which might, under section 3011, be imposed against a dramshop-keeper outside of St. Louis for keeping open on Sunday, nor does it depend on the prior conviction of the dramshop-keeper, but he is given exclusive power to grant dramshop licenses in the city of St. Louis, and exclusive power to revoke such license for a violation of any law governing dramshops.

4. ———: Permit. No one has a natural right to keep a dramshop or sell intoxicating liquors. A dramshop license is a mere per-

mit, which may be withdrawn at any time by the State upon its own prescribed terms. It is not property, nor is it a contract between the State and the licensee, and a revocation does not violate any of his personal or property rights.

5. ———: ———: Special Law: Constitutionality: Raised by Licensee. A statute is assumed to be valid until some one complains whose rights it invades. Conceding that a dramshop license is not property, but a mere permit or privilege, subject to revocation or to such conditions as the State may impose, then it necessarily follows that a licensee, whose license has been revoked for keeping open on Sunday, is in no position to raise the objection that the excise law relating to large cities is a special law in that it permits a summary revocation of licenses there by the commissioner for a cause which in other parts of the State will not warrant revocation except after conviction, and therefore is unconstitutional, and that he will not be heard to question the constitutionality of that law, for two reasons: first, the revocation of such license is not punishment within the meaning of the law; and, second, his personal or property rights are not affected by the revocation. Hence, he has no interest in defeating the law.

Held, by Fox, J., dissenting, that the law authorizing the Excise Commissioner in cities of 200,000 inhabitants or over to revoke the license of a dramshop-keeper for keeping open on Sunday, is a special law, and gives to that officer a power which cannot be exercised by the county courts outside of such cities under the general dramshop law, and is, therefore, to that extent, in conflict with the Constitution which forbids the enactment of a special or local law where a general law can be made applicable. Held, also, that any law authorizing the revocation of dramshop licenses must be uniform, and can be made uniform, and there is no reason why the dramshop-keeper in those cities should be denied the right of trial by jury for selling on Sunday if that right is accorded to a like dramshop-keeper elsewhere in the State.

6. ———: ———: ———: Harmony. The court will not, in order to promote harmony of enforcement and reconcile all provisions of a law bearing on the same subject, construe the excise law relating to cities having 200,000 inhabitants or more to mean that the Excise Commissioner can revoke a dramshop license for only those causes for which county courts elsewhere in the State may revoke such licenses—for the reason that the excise law relating to the cities says that the Excise Commissioner may revoke a license for a violation of

192 sup—46

any law governing dramshops, and that officer acts ministerially both in granting and revoking licenses, whereas outside such cities, where the general dramshop law is the only law on the subject, for keeping open on Sunday, a trial before a court having jurisdiction, in which a jury would be required if demanded, would have to be had, in order to revoke the license—a course which past experience has demonstrated is not practicable in large cities. Nor is there any such connection between the two statutes as requires any such reconcilement of their provisions.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

REVERSED (*with directions*).

*Herbert S. Hadley,* Attorney-General, *N. T. Gentry,* Assistant Attorney-General, and *Chas. P. Williams* for the State.

(1) Section 3021, Revised Statutes 1899, by its plain and unmistakable provisions, confers upon the Excise Commissioner the power to revoke the license of any dramshop-keeper if, in his opinion, the laws of the State have been violated. Higgins v. Talty, 157 Mo. 287. (2) This law is not a special or local law within the meaning of sections 53 and 54 of article 4 of the Constitution, for the reason that the conditions existing in large cities justified the Legislature in conferring upon the Excise Commissioner a different and more direct power for the regulation and control of dramshops in such cities than is conferred upon the county courts for the control and regulation of dramshops in rural districts.    State ex rel. v. Lawton, 69 Mo. 599; State ex rel. v. Miller, 100 Mo. 447; State ex rel. v. Bell, 119 Mo. 70; Higgins v. Talty, 157 Mo. 280; Ex parte Handler, 176 Mo. 383; Ex parte Lucas, 160 Mo. 218; Ex parte Loving, 178 Mo. 194; State v. Tower, 185 Mo. 94; State v. Speed, 183 Mo. 186; State ex rel. v. Mercantile Co., 184 Mo. 160.

*Edward C. Crow* and *Rassieur, Schnurmacher & Rassieur* for respondent.

(1)  Section 3011, which is not restricted in its operation but applies to dramshops generally, provides for a forfeiture of the dramshop-keeper's license upon a conviction for the offense of keeping open his dramshop on Sunday; and provides, further, that no license shall again be issued to him for two years next thereafter.  The forfeiture of the license forms a part of the punishment imposed for the commission of the offense. On the other hand, section 3021, applicable only to cities of 200,000 inhabitants or more, gives the Excise Commissioner authority to revoke any license granted by him if the dramshop-keeper shall violate any of the provisions of law governing dramshops.  If this section is to be so construed  as to warrant the revocation of a license for keeping open on Sunday, then (a) a dramshop license in a city of 200,000 inhabitants or over, may be revoked without a conviction; therefore, (b)  without a trial by jury, such as is afforded the dramshop-keeper elsewhere in the State; and  (c)  the dramshop-keeper is thereafter forever barred from receiving another license (sec. 3024) instead of being barred for only two years, as in the rest of the State (sec. 3011), and his punishment is therefore greater. (2) The court will take judicial knowledge of the fact that St. Louis is the only city of the State having a population of 200,000 inhabitants or more, and that the Act of 1893, creating the office of Excise Commissioner and defining his powers and duties, when passed and now, could only apply to the city of St. Louis.  State ex rel. v. Miller, 100 Mo. 450; State v. Anslinger, 171 Mo. 610.  (3)  Legislation affecting cities or counties of a given population will be upheld only where it is authorized or directed by the Constitution; or where some distinguishing exigency, reason or necessity justifies such classification.  Henderson v. Koenig, 168 Mo. 356.  (4)  It is not within the power of the Legislature to carve out by mere class-

ification of numbers a portion of the State and legislate with reference thereto; or to divide a natural class and arbitrarily enact different rules for the government of the parts. State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95. (5) Where a general law can be made to apply, no law special in its operations will be upheld, even though general in form. State v. Grannemann, 132 Mo. 326; Henderson v. Koenig, 168 Mo. 356; State v. Anslinger, 171 Mo. 600. (6) And a general law could have been made to apply in this case, because, for fifty years a general law, in point of fact, was made to apply to all parts of the State, irrespective of population. R. S. 1855, chap. 57, sec. 28. (7) Where several provisions of law relate to the same subject they should be so construed as to make them harmonize if possible. State ex rel. v. Slover, 126 Mo. 659; Macke v. Byrd, 131 Mo. 690. (8). A forfeiture when used in connection with a criminal statute denotes a fine, and becomes a part of the punishment for the criminal offense. State ex rel. v. Walbridge, 119 Mo. 390; Barnett v. Pemiscot County, 86 S. W. 575.

BURGESS, J.—On the 26th day of May, 1905, the grand jury of the city of St. Louis preferred an indictment against the defendant Seebold, charging him with having, on the 26th day of April, 1905, unlawfully sold intoxicating liquor without a license as a dramshopkeeper. It was also charged, and is shown upon the face of the indictment, that said defendant, on or prior to the 16th day of April, 1905, was a regularly licensed dramshop-keeper, and that said license was by the Excise Commissioner revoked for the reason that defendant had violated the provisions of the law governing dramshop-keepers by keeping his dramshop open on Sunday. The charge, therefore, is that defendant was conducting a dramshop without a license.

The indictment was transferred by the circuit court to the St. Louis Court of Criminal Correction, as re-

quired by law.   Thereafter, upon motion of the defend-
ant, the court last mentioned quashed said indictment
upon the ground that the statutes of this State confer
no authority upon said Excise Commissioner to revoke
a dramshop-keeper's license issued by him  for the
keeping open of such dramshop on Sunday, and that,
therefore, the action of the Excise Commissioner in re-
voking defendant's license was without authority, void
and of no effect.   The State appeals.

By section 3019, Revised Statutes 1899, the office of
Excise Commissioner was created in cities then having
or which might thereafter have a population of 200,000
inhabitants or more, and such commissioner vested with
exclusive authority to grant dramshop licenses.

Section 3020 of said statutes provides that any per-
son desiring a dramshop license shall present a petition
to the Excise Commissioner as required by the laws of
this State, and if the petition is signed by the requisite
number of petitioners and the applicant is a person of
good moral character, the commissioner shall give to
him a statement in writing, that upon payment of the
license tax required by law, a dramshop license will be
issued to such applicant.

Section 3021 provides, among other things, that
"the commissioner shall have authority to revoke any
license by him granted, if the dramshop-keeper to whom
license has been issued shall violate any of the provis-
ions of the laws of this State governing dramshops."

The laws of this State governing dramshops are
found in article I, chapter 22, Revised Statutes 1899. Sec-
tion 3011 of said article provides that "any person hav-
ing a license as a dramshop-keeper, who shall keep open
such dramshop, or shall sell, give away or otherwise dis-
pose of, or suffer the same to be done upon or about his
premises, any intoxicating liquors, in any quantity, on
the first day of the week, commonly called Sunday, or
upon the day of any general election in this State, shall,
*upon conviction thereof,* be punished by a fine of not

less than fifty nor more than two hundred dollars, *shall forfeit such license,* and shall not again be allowed to obtain a license to keep a dramshop for the term of two years next thereafter.''

The next section of this article (section 3012) provides that whenever it shall be shown to the county court (which court receives applications for and issues dramshop licenses in the State at large) that any dramshop-keeper of the county has not at all times kept an *orderly house,* such court shall order the license of the dramshop-keeper to be revoked, and from the date of such order the dramshop-keeper shall be deemed to have no license and to be without the authority of law to act as a dramshop-keeper. The same section provides that the dramshop-keeper shall be notified in writing of any application for the revocation of his license five days before the order shall be made.

It will be observed that power is expressly conferred upon the Excise Commissioner to revoke any license by him granted if the dramshop-keeper to whom license has been issued shall violate any of the provisions of the laws of the State governing dramshops (Higgins v. Talty, 157 Mo. 280), among which provisions are that he shall not keep open such dramshop, or sell, give away, or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquors, in any quantity, on the first day of the week, commonly called Sunday. [Section 3011, supra]. While defendant concedes the authority of the Excise Commissioner to revoke the license of a dramshop-keeper issued by him, for keeping a disorderly house, as was held in the Higgins case, he denies his authority to do so in this case, because he must find his authority so to do, if any he has, in the dramshop law; that for the violation of the Sunday law, the county court is not given power to revoke the license, but a forfeiture of such license results in consequence of the conviction of the dramshop-keeper of such violation; that, upon the

other hand, the Excise Commissioner is, by section 3021, supra, given authority to revoke a license for any violation of the law of the State governing dramshops, which provision, if valid, and as construed by the State, would warrant the Excise Commissioner in revoking a license theretofore granted by him for keeping open a dramshop, or selling liquor in any quantity on Sunday, as well as for failure to keep an orderly house. But the authority of the Excise Commissioner to revoke the license of a dramshop-keeper in no way depends upon the fine, forfeiture or penalty which might be imposed upon such an offender, under section 3011, Revised Statutes 1899, against a dramshop-keeper outside of the city of St. Louis for the violation of that statute, for the reason that the exclusive power to grant dramshop licenses in the city of St. Louis, and to revoke them, is vested in the Excise Commisioner, the causes for which such power of revocation may be exercised being prescribed by statute; that is, the violation of any of the provisions of the laws of this State governing dramshops.

It is fundamental that no one has a natural right to sell intoxicating liquor, because the tendency of its use is to deprave public morals, and to do so without a license from proper authority is unlawful. [Austin v. State, 10 Mo. 591; State ex rel. v. Moore, 84 Mo. App. 11; State ex rel. v. Hudson, 78 Mo. 302; State v. Bixman, 162 Mo, 1; Black on Intoxicating Liquors, sec. 24.] In the city of St. Louis the only authority to grant such license is vested in the Excise Commissioner. [Section 3019, supra; Higgins v. Talty, supra.] So it was held in the case last cited that a dramshop license is a mere permit, is not a contract between the State and the licensee in which the latter has vested rights, but is subject at all times to the police power of the State government, and may be revoked at any time it may see proper to do so for any violation of the law governing dramshops, whether the license so provide or not, and under

the statute, in the city of St. Louis, the Excise Commissioner has authority to revoke a license of a dramshop-keeper who is keeping and conducting a disorderly and disreputable dramshop, and his action in doing so is not the exercise of a judicial power.

In Black on Intoxicating Liquors, section 189, it is said: ''A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional meaning of those terms. It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State. Hence the authority which granted the license always retains the power to revoke it, either for cause of forfeiture, or upon a change of policy and legislation in regard to the liquor traffic. And such revocation cannot be pronounced unconstitutional, either as an impairment of contract obligation, or as unlawfully divesting persons of their property or rights.'' [Cherry v. Commonwealth, 78 Va. 375; People ex rel. v. Wright, 3 Hun 306; Higgins v. Talty, supra.]

In Voight v. Board of Excise, 59 N. J. L. 358, 36 Atl. 686, 37 L. R. A. 292, it was contended that the license was property, and that it could not be taken away from the holder except by a judicial proceeding. The court, answering this contention, said: ''We do not think that either of these contentions is well founded. A license is in no sense property. It is a mere temporary permit to do what otherwise would be illegal, issued in the exercise of the police power''— citing Lantz v. Hightstown, 46 N. J. L. 102; Board of Excise v. Barrie, 34 N. Y. 657; 11 Am. and Eng. Ency. Law, 634. The law being thus well settled that the licensee holds no contract which gives him a vested right under the license, that he holds a mere permit subject to revocation by the power which granted it for cause, it follows that the proceeding to revoke the license is not judicial in its character. If there are no property rights involved, there is nothing calling for the exercise of the judicial

power, nor the judicial functions of the county court in revoking the license, and the county court, in acting in that behalf, instead of proceeding in the capacity of a court exercising judicial powers, would proceed in the capacity of an excise board as an agent of the State in a ministerial or administrative capacity, exercising the police powers and enforcing police regulations of the State in revoking the permit which the licensee had violated. In proceedings of this kind, Black on Intoxicating Liquors, section 194, states the law as follows: "The proceeding may be summary, and the authorities are not required to take the formal proceedings essential to form the basis of a judicial decision affecting life, liberty or property. Nor is this the species of proceeding in which the defendant is entitled, as a matter of constitutional right, to a trial by jury." [Barnett v. County Court, 111 Mo. App. 693.]

It was expressly held in State ex rel. Hunt v. Bell, 119 Mo. 70, that the law in question is not subject to the objection that it is either a local or special law; and, while counsel for defendant do not question the correctness of that decision in respect of its general scope and meaning, they do challenge its correctness in that it confers upon the Excise Commissioner, in a city of two hundred thousand inhabitants or more, the power to revoke the license of any dramshop-keeper who shall violate any of the provisions of the laws of the State governing dramshops, while the statute with respect to licensed dramshop-keepers outside of such city provides that any dramshop-keeper who shall keep open such dramshop, or shall sell, give away or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquors, in any quantity, on the first day of the week, commonly called Sunday, shall, upon conviction thereof, be punished by a fine and forfeiture of his license, and he shall not again be allowed to obtain a license to keep a dramshop for the term of two years next thereafter, thus inflicting different pun-

ishments for the same acts in the same locality, the result of which is to make the excise law, in this respect, local and special, in violation of section 53 of article 4 of the Constitution. If, as we have said, a license to sell intoxicating liquors is not property, but a mere privilege, subject to revocation or to such conditions as the State may see fit to impose (Voight v. Board of Excise, 59 N. J. L. 358; Board of Excise v. Barrie, 34 N. Y. 667; Higgins v. Talty, supra), the defendant is in no position to raise objection, and will not be heard to question the constitutionality of the excise law, because, in the first place, the revocation of such license is not punishment within the meaning of the law, and, because, in the second place, his personal or property rights were not affected by the act of the Excise Commissioner in revoking his license, and he has, therefore, no interest in defeating the law. The statute is assumed to be valid until some one complains whose rights it invades. "Prima facie, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only is it necessary to go, in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called on to interpose." [Cooley's Constitutional Limitations (7 Ed.), p. 232; Cunningham v. Railroad, 165 Mo. 270; State v. Hathaway, 106 Mo. 236.] In Jones

v. Black, 48 Ala. 540, it is said: "Nor will a court listen to an objection made to the constitutionality of an act of the Legislature by a party whose rights it does not specially affect. An act of the Legislature will be assumed to be valid, until some one complains whose rights it invades; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained." [Shehane v. Bailey, 110 Ala. 308.] Only such persons as are in some way prejudiced by an unconstitutional law can complain of it. [Commonwealth v. Wright, 79 Ky. 22; State ex rel. Kellogg v. Currens, 111 Wis. 431.]

A final contention is that harmony, if at all attainable, is always the object of judicial interpretation; that it is always the aim and purpose of the courts to reconcile various provisions of law bearing on the same subject and to give such construction to all such provisions as will harmonize them (State v. Pitts, 51 Mo. 133; Macke v. Byrd, 131 Mo. l. c. 690); and that complete harmony can be created between section 3011 of the dramshop act and section 3021 of the excise commissioner act by an interpretation which will give to the latter section the meaning that the Excise Commissioner has authority to revoke any license by him granted, if the dramshop-keeper shall violate any of the provisions of the laws governing dramshop-keepers, in the same way and under the same circumstances under which such licenses may be forfeited as provided by section 3011. But this position seems untenable in this case, for the reason that the Legislature, in passing the excise commissioner act and creating the office of Excise Commissioner, intended to clothe such commissioner with full and exclusive power and authority to license dramshop-keepers and to revoke any license by him granted, if the dramshop-keeper to whom he has issued license shall violate any

of the provisions of the laws of this State govern-ing dramshops, regardless of the fact that a dif-ferent course is required to be pursued in the case of a violation of such laws by dramshop-keepers outside cit-ies of two hundred thousand inhabitants or more. The Excise Commissioner acts ministerially both in grant-ing dramshop licenses and in revoking them, while un-der the dramshop law a trial, under the general statute for keeping open a dramshop and selling liquor on Sun-day, would have to be before a court having jurisdic-tion, and in which a jury would be required should the defendant be inclined to demand a trial by jury. Such latter course would not be practicable in a large city like St. Louis, as past experience has demonstrated; hence, the enactment of the excise law.

Moreover, the two sections of the statutes last re-ferred to have no connection with or reference to each other, except that section 3021 refers to the dramshop law in a general way as specifying the violations of that statute for which the Excise Commissioner is author-ized to revoke the license of any dramshop-keeper is-sued by him.

Our conclusion is that the judgment should be re-versed, with instructions to the trial court to overrule the demurrer and to proceed with the trial of the cause in accordance with the views herein expressed.

*Gantt* and *Valliant, JJ., concur; Lamm, J.,* con-curs in the result; *Fox, J.,* dissents; *Marshall, J.,* not sitting; *Brace, C. J.,* absent.

### DISSENTING OPINION.

FOX, J.—I am unable to concur in the majority opinion in this cause, and the proposition involved, as disclosed by the record, being a new one, I deem it ap-propriate to at least indicate, in a brief way, the reasons for my dissent.

The record in this cause discloses that the validity and force of section 3021, Revised Statutes 1899, vest-

ing power in the Excise Commissioner of the city of St. Louis to revoke the license of any dramshop-keeper who shall violate any of the provisions of the law of this State governing dramshops, is challenged, and it is to this proposition I shall direct my attention. The general law of this State governing dramshops will be found in article 1, chapter 22, Revised Statutes 1899. Section 3011 of said article provides that "any person having a license as a dramshop-keeper who shall keep open such dramshop, or shall sell, give away or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquors, in any quantity, on the first day of the week, commonly called Sunday, or upon the day of any general election in this State, shall, *upon conviction thereof,* be punished by a fine of not less than fifty nor more than two hundred dollars, *shall forfeit such license,* and shall not again be allowed to obtain a license to keep a dramshop for the term of two years next thereafter."

It will be observed that this section expressly provides that a dramshop-keeper who shall keep open his dramshop or shall sell, give away or otherwise dispose of, or suffer the same to be done upon or about his premises, in any quantity, intoxicating liquors, on Sunday, shall upon conviction thereof, be punished by a fine of not less than fifty nor more than two hundred dollars, shall forfeit such license, and shall not again be allowed to obtain a license to keep a dramshop for a term of two years next thereafter. This section makes the selling of intoxicating liquors by a dramshop-keeper a misdemeanor, and as a part of the punishment for the commission of that offense, in addition to the fine imposed, his license as such dramshop-keeper shall be forfeited. We have, then, by this section, an express provision of the statute as to how and by what authority the license of a dramshop-keeper for keeping open his dramshop or selling, giving away or otherwise disposing of intoxicating li-

quors on Sunday, shall be revoked. It is clear that this provision of the statute is applicable to dramshop-keepers in the city of St. Louis, as well as in other parts of the State. In the city of St. Louis the law provides for the appointment of an Excise Commissioner who is vested with power and authority to issue dramshop licenses. Section 3021, in respect to the duties to be performed by the Excise Commissioner of the city of St. Louis, provides among other things, that the commissioner shall have authority to revoke any license by him granted, if the dramshop-keeper to whom the license has been issued, shall violate any of the provisions of the laws of this State, governing dramshops.

The defendant, respondent in this case, was a dramshop-keeper and the Excise Commissioner, in pursuance of the authority vested in him by section 3021, supra, revoked his license on the ground that he had been keeping open his dramshop on Sunday. Not heeding this revocation of his license, the defendant proceeded to conduct his usual business and the grand jury of the city of St. Louis indicted him for selling intoxicating liquors without a license, showing upon the face of the indictment that his license had been revoked, as heretofore stated. This indictment in the court below was quashed upon the ground that the statute of this State conferred no authority upon such Excise Commissioner to revoke such dramshop license issued by him, for the keeping open of such dramshop on Sunday, and that therefore the action of the Excise Commissioner was without authority, void and of no effect; hence, this appeal by the State.

If section 3021 is to be construed as authorizing the Excise Commissioner to revoke the license of dramshop-keepers in the city of St. Louis for keeping open or selling, giving away or otherwise disposing of intoxicating liquors on Sunday, then in my opinion it is in conflict with article 4, section 53, of the Constitution of this State, where it is provided: "Where a gen-

eral law can be made applicable no local or special law shall be enacted, and whether a general law could have been made applicable in any case is hereby declared a judicial question and as such shall be judicially determined, without regard to any legislative assertion upon that subject." It is not only apparent that a general law can be made applicable upon this subject to all dramshop-keepers of the State, but that a general law has been made which covers the entire subject and is applicable to every dramshop-keeper in the State. The provisions of section 3011, the general law of this State governing dramshop-keepers, which provides that upon conviction of keeping open their dramshops or selling, giving away or otherwise disposing of intoxicating liquors on Sunday, they shall be fined and their licenses forfeited, is addressed to every dramshop-keeper of this State, including those in the city of St. Louis. The offense of keeping a dramshop open on Sunday in the city of St. Louis is of no higher grade of misdemeanor than it is in any other part of the State, and the lawmaking power of this State is not authorized to make any distinction as to the commision of that offense, and provide one method for revoking a license for the commission of it in the city of St. Louis, and another separate and distinct method of revoking the license in other parts of the State.

I do not dispute the proposition, for it is fundamental, that no one has a natural right to sell intoxicating liquors, and that the granting of a license to sell intoxicating liquors is a mere temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State, and that such license, by proper authority, may be revoked at any time, but my position is that the dramshop-keepers of Missouri, under this general law, stand upon the same level, and that the law which undertakes to revoke this temporary permit must be uniform. While the State, as a part of its internal police system, may pro-

vide by law for the revocation of the permit or license to sell intoxicating liquors, this law must be general in its application, and cannot say to the same class of persons, that is, dramshop-keepers, in one part of the State, if you keep open your dramshops and sell intoxicating liquors on Sunday, upon *conviction* your licenses will be forfeited, and to this same class, in another part of the State, say if you keep open your dramshops and sell intoxicating liquors on Sunday, it will not be necessary to convict you as it is persons in your class as dramshop-keepers in other parts of the State, but such punishment will be summarily imposed by the officer who issued you your license. This, in my humble opinion, cannot be done. If it can, then we have, in dealing with the same class of persons, covered by the same general law of the State applicable to such persons, this condition of the law: that is, outside of the city of St. Louis, in order to revoke a dramshop-keeper's license for keeping open his dramshop and selling intoxicating liquors on Sunday, section 3011 of the general law must be invoked, a charge by indictment or information must be lodged against the offender, and such revocation must follow as a part of the judgment resulting from a trial and conviction, in which trial the accused has the right to demand a jury, and from the judgment revoking his license can exercise the right of appeal. On the other hand, in the city of St. Louis, for the doing of the same act, that is, keeping open a dramshop and selling intoxicating liquors on Sunday, by a person belonging to the same class of persons, that is, dramshop-keepers, embraced in the same general law of the State as those outside of the city, a dramshop-keeper may have his license revoked without any charge, either by indictment or information, and without the right of trial by jury or the right of appeal from the action of the officer authorized to revoke such license. The illogical and unsatisfactory condition of the law upon this subject will be further suggested to the courts of the

city of St. Louis in assessing the punishment upon conviction of a dramshop-keeper, for the commission of the misdemeanor of keeping his dramshop open and selling intoxicating liquors on Sunday. If the Excise Commissioner, prior to the conviction by the court, had, for the same cause or offense, revoked the license of the dramshop-keeper, then the court, in assessing the punishment, would be limited to the imposition of a fine, for the reason that the commissioner had, prior thereto, imposed the additional punishment of a revocation of the license, notwithstanding that the power to impose such additional punishment was expressly provided for and vested in the court under section 3011 of the general law of the State governing dramshop-keepers.

I have no doubt of the authority of the State, through its General Assembly, to provide for the revocation of the permit or license to sell intoxicating liquors at any time it may deem proper; but such law must be uniform and made applicable to all persons of the same class.

The keeping open of a dramshop by a dramshop-keeper and selling or giving away intoxicating liquors on Sunday is made a misdemeanor under the general law of the State, and is as much a violation of such law if committed in one part of the State as another, and a law which undertakes to revoke a license of the same class of persons for the doing of such acts, in one part of the State, in a summary way, without a judgment or the right of trial by jury, or the right of appeal, which is entirely different and in conflict with the general law of the State, applicable to and embracing the same class of persons in other parts of the State, should be treated as a special law and held invalid, as being violative of the provisions of the Constitution of this State heretofore indicated. For these reasons the judgment should be affirmed, and I most respectfully dissent from the majority opinion.