BARNETT, Appellant, v. PEMISCOT COUNTY COURT, Respondent.

**St. Louis Court of Appeals, April 4, 1905.**

1. **COUNTY COURTS: Appeals: Judicial Act.** Under section 1788, Revised Statutes of 1899, construed with section 1674, an appeal will lie from the county court to the circuit court only when the judgment or order appealed from is judicial and triable *de novo* in the circuit court; an appeal will not lie in a matter of proceeding not judicial in its nature.

2. **DRAMSHOP LICENSES: Police Regulation.** A dramshop license issued by a county court is a mere permit and in no case is such a license a contract between the State and the licensee, so that a dramshop keeper or licensee has no vested right; such licenses are at all times subject to the police powers of the State and may at any time be revoked by the State government for violations of the statute regulating the conduct of dramshops.

3. **COUNTY COURTS: Revoking Dramshop License: Ministerial Function: Appeal.** A dramshop keeper in accepting a license does so subject to all the provisions of section 3012 of the Revised Statutes of 1899 and subject to the right of the county court, in the administration of the police powers of the State, to revoke the license for failure to comply with the statutes; such a revocation is not a judicial proceeding but a mere ministerial act from which an appeal to the circuit court will not lie.

4. ————: ————: **Circuit Court: Judicial Function.** The fact that under sections 3017 and 3018, Revised Statutes of 1899, a dramshop keeper, convicted in the circuit court of an offense therein defined, shall, in addition to such fine, forfeit his license, does not make the forfeiture of the license the direct object of a judicial procedure; therefore, it can not be said by reason of those facts that the circuit court has jurisdiction to revoke a dramshop license, so as to give it jurisdiction of an appeal from an order of the county court revoking the licene.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*C. G. Shepard* for appellant.

(1)　Appeals will lie from the county court to the circuit court from any final judgment or order having the effect of a final disposition of any cause or proceeding in the county court, in which that court acts in a judicial character and not in its mere administrative capacity. Scott County v. Leftwitch, 145 Mo. 26, 46 S. W. 963; Colville v. Judy, 73 Mo. 651; Webber v. Spindler, 36 Mo. App. 355; State ex rel. v. Shelton, 55 S. W. 1008; State ex rel. v. St. Louis County Court, 47 Mo. App. 648.　(2)　The circuit court has the power to order dramshop license revoked for violation of any of the laws of this State in regard to dramshops, and consequently had jurisdiction to hear, try and determine the matter in question de novo, and enter up judgment according to the facts, as shown by the evidence at the trial; and for that reason the appeal to the circuit court should have been allowed. And especially so in this case, since the records of the county court show defendant has been found guilty in the circuit court of the same offense. If the circuit court once had jurisdiction, what now deprives it of jurisdiction?　State ex rel. Spelman v. Allen, 92 Mo. 20, 4 S. W. 414; Twinning v. St. Louis County Court, 47 Mo. App. 648; Sheridan v. Flemming, 93 Mo. 321, 5 S. W. 813; State v. Collier, 62 Mo. App. 38; McVey v. McVey, 51 Mo. 422.

*Farris & Oliver* for respondent.

(1)　The sole and only question to be determined by this court is whether the relator was entitled to an appeal from the order of the county court revoking his license as a dramshop keeper, under the power. The appellate jurisdiction of circuit court, in reference to judgments of county courts is fixed by statute, and set in the fourth clause of section 1674, Revised Statutes 1899, and this court has correctly declared the law in constructing

this same clause by holding that "appeals are allowed from the judgment of the county courts only when in nature of the case, the circuit court can try the matter anew, and give such a judgment as the county court should have given." State ex rel. v. St. Louis County Court, 47 Mo. App. 647; Bean v. County Court, 33 Mo. App. 635; Sheridan v. Flemming, 93 Mo. 321, 5 S. W. 813. (2) The circuit court can neither grant a dramshop license, nor under this section of the statute revoke a dramshop license. Therefore no appeal lies from a proceeding under this statute to the circuit court. By other sections of the Dramshop Act it is provided as a penalty for certain violations thereof, that "in addition" to the statutory penalties, the license shall be forfeited when a conviction is had. But in no case can the circuit court proceed to revoke a license merely. There must first be some criminal violation, and then the forfeiture of license becomes an element of the penalty. Sec. 3011, R. S. Mo. 1899; Sec 3017, R. S. Mo. 1899; Sec. 3018, R. S. Mo. 1899. (3) The power of the county court to revoke dramshop license, without the interference of higher tribunals has been fully presented to this court and the State Supreme Court, and in two cases, analogous to the one at bar, adversely decided to the contentions of the appellant. Higgins v. Talty, 157 Mo. 280, 57 S. W. 724. (4) Appellant contends that he has unconstitutionally been deprived of certain property rights. In this and all States it is well settled law that a license to sell liquor is neither a contract, nor a right of property within the legal and constitutional meaning of these terms. As it is no more than a temporary permit to do that, which would otherwise be unlawful, the authority which grants it, always retains the power to revoke it for due cause. And such revocation cannot be pronounced unconstitutional either as an impairment of contract obligations or an unlawful divesting of persons of their property rights. State ex rel. v. Moore, 84 Mo. App. 11; Austin v. State, 10 Mo. 301; State ex rel. v. Higgins, 84 Mo. 531;

Brown v. State, 88 Ga. 224; Commonwealth v. Brenum, 130 Mass. 170; Blank on Intoxicating Liquors, sec. 128, et seq.

## STATEMENT.

This is a proceeding in mandamus. The respondents, H. C. Schult, Scott McDonald and Timothy Doris are the judges of the county court of Pemiscot county. The appellant was a licensed dramshop keeper in the village of Cotton Wood Point in said county. A complaint was lodged against appellant in the county court of said county under section 3012, R. S. 1899, asking the county court to revoke appellant's license as such dramshop keeper, alleging that he did not at all times keep an orderly house. Appellant appeared, together with his counsel, in said court and contested the allegations of said complaint. There being then pending against appellant in the circuit court of said county an information charging appellant with suffering to be performed upon in his dramshop, certain musical instruments, the matter pending against him in the county court wherein it was sought to revoke his license, was continued to await the decision of the circuit court on said information. Afterwards, appellant was tried and convicted on said information. At a called term of the county court thereafter, the matter to revoke the license of appellant as a dramshop keeper was again taken up by said county court, appellant's counsel appearing thereto, further evidence was taken therein and the county court entered an order of record revoking appellant's license as a dramshop keeper, whereupon appellant filed his affidavit for an appeal from said order revoking his license and prayed an appeal therefrom to the circuit court of said county which said motion and affidavit for appeal were overruled by the county court and appellant was denied an appeal therein. Whereupon appellant brought this proceeding by mandamus in the circuit court of said

county praying said circuit court for a writ of mandamus, commanding and requiring the county court to grant appellant an appeal from said order of the county court revoking his license aforesaid to the circuit court of Pemiscot county as asked and prayed for in his affidavit for appeal. The respondents, for a return to the alternative writ of mandamus, demurred to the petition of appellant on the ground that the petition and the matters and things therein stated and set forth were not sufficient in law to entitle plaintiff to the relief prayed for, which said demurrer was by the court sustained. Thereupon appellant refused to plead further. Final judgment was entered thereon, and appellant has prosecuted his appeal to this court therefrom.

The sole and only question before this court for decision is whether or not appellant was entitled to an appeal to the circuit court from the order of the county court revoking his said dramshop license.

NORTONI, J. (after stating the facts).—The matter of appeals from county to circuit courts as provided by statute is as follows. Section 1674, R. S. 1899, provides: "The circuit courts in the respective counties in which they may be held, shall have power and jurisdiction as follows: . . . . . Fourth, appellate jurisdiction from the judgments and orders of county courts, probate courts and justices of the peace, in all cases not expressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind." Section 1788 provides: "In all cases of appeal from the final determination of any case in a county court, such appeal shall be prosecuted to the appellate court in the same manner as is provided by law for the regulation of appeals from justices of the peace to circuit courts, and when any case shall be removed into a court of appellate jurisdiction by appeal from a county court, such appel-

late court shall thereupon be possessed of such cause, and shall proceed to hear and determine the same anew, and in the same manner as if such case had originated in such appellate court without regarding any error, defect or informality in the proceedings of the county court." The law nowhere prohibits appeals from county to circuit courts in any class of cases, therefore the limitation of the right of appeal found in the statutes must be left to interpretation by the court. State ex rel. Twining v. St. Louis County Court, 47 Mo. App. 647. The language conferring appellate jurisdiction upon the circuit courts in matters appealed from county courts being in "all cases not expressly prohibited by law," and there being no statute prohibiting appeals of any class, the right of appeal would appear to cover all manner of matters of which a county court has jurisdiction. But it is the duty of the court in interpreting this statute to read in connection therewith section 1788 above quoted on the same subject, which last mentioned statute directs how an appeal may be perfected to the circuit court and what shall be done with such case after it reaches the appellate court. It provides, "such appellate court shall thereupon be possessed of such case and shall proceed to hear and determine the same anew." When we read these two sections together, we are forced to the inevitable conclusion that appeals from county to circuit courts can be had only in such cases as are triable *de novo* in the circuit court, that is, susceptible of being tried anew in the appellate court and in which the circuit court can enter a valid judgment of its own. An appeal can only be taken when the judgment or order appealed from is judicial. If the matter be not judicial there is no appeal. Ency. Pl. & Pr., vol.2, p. 26; Elliott, App. Procedure, sec. 78; St. L., I. M. & S. Railway, Co. v. City of St. Louis, 92 Mo. 160, 4 S. W. 664; Scott Co. v. Leftwich, 145 Mo. 26, 46 S. W. 963; Bean v. Barton County Court, 33 Mo. App. 634; State ex rel. Twining, 47 Mo. App. 647. It has been held that, "Appeals

are allowed only where, when in the nature of the case, the circuit court can try the matter anew, and give such judgment as the county court should have given." Sheridan v. Fleming, 93 Mo. 321, 5 S. W. 813.

It will be observed that the statutes above quoted granting the right of appeal, does not provide for an appeal in all matters of which the county court has jurisdiction. Section 1674 provides for an appeal in all "cases" not expressly prohibited, etc. The same word "cases" is employed in section 1788 as is also the word "causes" which is synonymous therewith. The word "case" or "cause" to which the statute confers the right of appeal, has a well settled and defined meaning in law. Black's Law Dictionary defines it as follows: "The primary meaning of 'case' is 'cause' when applied to legal proceedings; it imports a state of facts which furnishes occasion for the exercise of the jurisdiction of the court of justice. In its generic sense, the word includes all causes, special or otherwise." "A case is a contested question before a court of justice; a suit or action; a cause; a state of facts involving a question for discussion or decision, especially a cause or suit in court." 2 Am. & Eng. Ency. Law., vol. 5, 748; Roberts v. Baldwin, 165 U. S. 275; Calderwood v. Peyser, 42 Cal. 115; Home Ins. Co. v. N. W. Packet Co., 32 Ia. 223; Ex parte Towles, 48 Tex. 433; Kundolf v. Thalheimer, 12 N. Y. 596. When viewed from this standpoint, as well as that heretofore mentioned, it is apparent that the statute contemplates appeals in judicial matters only, that is, in cases or causes in which some substantial right is involved and under adjudication. The substantial civil rights guaranteed by our Constitution are primarily those of life, liberty and property. If any one of these be invaded or infringed upon, the citizen is entitled to invoke the judicial process of the courts in order to have his rights measured, ascertained and protected by due process of law. When none of these fundamental rights are involved in the proceeding, then the proceeding is not neces-

sarily judicial. It therefore follows that in a matter or proceeding not judicial in its nature, there would be no case or cause within the contemplation of the statute for appeal and no appeal would be allowed unless by special provision of the statutes authorizing such appeal. Appeals are not allowed in every manner of matter brought before the county court for summary proceedings. In consonance with the above doctrine it has been decided by this court that an appeal does not lie from an order of a county court granting a dramshop license. State ex rel. Twining v. County Court, 47 Mo. App. 647, also by the Kansas City Court of Appeals, Bean v. Barton County Court, 33 Mo. App. 625. In the last two cases the courts based their decisions upon the fact that the circuit court had no authority to grant a dramshop license, hence the matter was one which the circuit court could not try anew and for this reason the appeal was not contemplated nor authorized by the statute quoted. In Sheridan v. Fleming, 93 Mo. 321, 5 S. W. 813, the Supreme Court held that there was no appeal by the party in interest from the order of the county court refusing to levy a special tax to pay a warrant held by such party for building a ditch, under the statute, on the ground that the circuit court could not levy a tax. The same doctrine is held in St. L., I. M. & S. Railway Co. v. City of St. Louis, 92 Mo. 160, 4 S. W. 664.

"Appeals will not lie from decisions upon ministerial, legislative or executive questions . . . . It may be said with safety that where a discretionary power is conferred upon an officer or tribunal the general rule is that no appeal can be taken from the decisions made by such officer or tribunal." Elliott on Appellate Procedure, sec. 78; 2 Ency. Pl. & Pr., 26; Scott Co. v. Leftwitch, 145 Mo. 26, 46 S. W. 963. This brings us, then, to determine whether or not a proceeding to revoke a dramshop license under the provisions of sec. 3012, is a judicial proceeding. The section is as follows:

"Whenever it shall be shown to the county court,

upon the application of any person, that any dramshop keeper of the county has not at all times kept an orderly house, such court shall order the license of such dramshop keeper to be revoked, and from the date of such order the dramshop keeper shall be deemed to have no license, and to be without the authority of law to act as a dramshop keeper; but the dramshop keeper shall be notified in writing of such application, five days before the order shall be made and costs shall be awarded against the losing party."

It would seem from the fact that the statute provides for notice to the dramshop keeper and that costs shall be awarded against the losing party that the statute contemplates a trial of the matter before the county court; that evidence would be received pro and con on the question therein submitted and that a determination thereof by the county court would be an exercise of the judicial functions of the court and therefore that the question would be judicial in its nature, and no doubt this would be true, provided the dramshop keeper or licensee under the license sought to be revoked, had a vested or property right under the license. It is settled law of this jurisdiction, however, that the sale of intoxicating liquors is unlawful because of its tendency to deprave public morals. Austin v. State, 10 Mo. 591; State ex rel. v. Hudson, 78 Mo. 302, State ex rel. v. Moore, 84 Mo. App. 11; State ex rel. v. Higgins, 84 Mo. App. 531; State v. Bixman, 162 Mo. 1, 62 S. W. 828; Black on Intoxicating Liquors, sec. 24. That no person has a right to sell intoxicating liquors in this State as a dramshop keeper without having a license from the proper authorities authorizing him to do so and in the counties, exclusive authority to grant such license is vested in the county court by secs. 2990 and 2993, R. S. 1899. Higgins v. Talty, 157 Mo. 280, 57 S. W. 724; State v. Bixman, 162 Mo. 1, 62 S. W. 828. It is well settled by the adjudicated law of this State and country that such licenses when issued or granted, are merely permits and that in no case

are such licenses contracts between the State and the licensee in which the dramshop keeper or licensee has a vested right, but, on the contrary, they are at all times subject, by reason of the tendency of the business to deprave public morals, to the police powers of the State and may be revoked at any time by the State goverment for a violation of the statutes of the State provided for the regulation of the sale of liquors under such license, whether such stipulation be contained in the license or not. The statutes of the State governing the sale of liquors and the conduct of dramshops thereunder, become a part and parcel of the license. The licensee necessarily accepts the license thereunder and subject thereto, and the statutes are as effectively a part of the license as if incorporated therein and therefore, when the appellant in this case accepted the license from the county court of Pemiscot county, he accepted it subject to all of the provisions of section 3012, supra, and subject to the right of the county court in the administration of the police powers of the State, to revoke the license upon it being made to appear to such court as therein specified that he had not at all times kept an orderly house. Higgins v. Talty, 157 Mo. 280, 57 S. W. 724.. "A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional meaning of those terms. It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State. Hence the authority which granted a license always retains the power to revoke it, either for due cause of forfeiture or upon a change of policy and legislation in regard to the liquor traffic. And such revocation cannot be pronounced unconstitutional either as an impairment of contract obligations or as unlawfully divesting persons of their property or rights." Black on Intoxicating Liquors, sec. 189; Cherry v. Commonwealth, 78 Va. 375; People v. Wright, 3 Hun 306; Higgins v. Talty, 157 Mo. 280.

The Supreme Court of New York has well stated the law as follows: "The board being satisfied, to exercise their discretion in respect to revoking licenses that a violation of the law had taken place, were not required to take the formal proceedings and full evidence which might be proper and necessary to reach a judicial conclusion, which should work a deprivation of property or produce an interference with life or liberty. They were simply to become satisfied in their judgment, and then this right, as well as duty, to revoke the *permit* which had been given relator, was clear. They were simply recalling the permit which relator had obtained and held from the board and which he accepted upon condition that the board might, in their discretion, revoke." People v. Wright, 3 Hun 310; People v. Haughton, 41 Hun 558. "That the power to license the sale of intoxicating liquors and to cancel such license when granted is vested in the Legislature has been determined by the court. (Met. Board of Excise v. Barrie, 34 N. Y. 657.) The mode and manner in which this shall be done rests in the discretion of that body." People v. Board of Com., 59 N. Y. 92. In Voight v. Board of Excise, 59 N. J. Law Rep. 358, it was contended that the license was property and that it could not be taken away from the holder except by a judicial proceeding. The court, answering this contention, said: "We do not think that either of these contentions are well founded: A license is in no sense property. It is a mere temporary permit to do what otherwise would be illegal, issued in the exercise of the police power," citing Lantz v. Heighstown, 17 Vroom. 102; Board of Excise v. Barrie, 34 N. Y. 657; 11 Am. & Eng. Ency. Law, 634. The law being thus well settled that the licensee holds no contract which gives him a vested right under the license, that he holds a mere permit subject to revocation by the power which granted it for cause, it follows that the proceeding to revoke the license is not judicial in its character. If there are no prop-

erty rights involved, there is nothing calling for the exercise of the judicial power nor the judicial fuctions of the county court in revoking the license, and the county court in acting in that behalf, instead of proceeding in the capacity of a court exercising judicial powers, would proceed in the capacity of an excise board as an agent of the State in a ministerial or administrative capacity, exercising the police powers and enforcing police regulations of the State in revoking the permit which the licensee had violated. In proceedings of this kind, Black on Intoxicating Liquors, sec. 194, states the law as follows: "The proceeding may be summary and the authorities are not required to take the formal proceedings essential to form a basis of a judicial decision affecting life, liberty or property. Nor is this the species of proceeding in which the defendant is entitled as a matter of constitutional right, to a trial by jury." In a recent case in which the excise commissioner of St. Louis, under sec. 3021, R. S. 1899, had revoked the license of a dramshop keeper for the same reason as in the case at bar, our Supreme Court said: "Rosselli's license is not a contract with the State, not property within the meaning of the Constitution but is subject at all times to the police powers of the State government, by which it is provided that such licenses may be revoked by the excise commissioner for violation of the law and this, without waiting until Rosselli had been convicted by a court having jurisdiction for violation of the law, and that in proceeding to do so, he was not acting judicially, but under the power conferred upon him by statute with respect to subject-matter over which he has exclusive control." Higgins v. Talty, 157 Mo. 280. This case was recently decided by our Supreme Court. In principle it is identical with the case at bar and is decisive of this question.

It is contended, however, by appellant that as sections 3017 and 3018, R. S. 1899, criminal in their nature, provide that in the event the dramshop keeper is

convicted in the circuit court on information or indictment of any one of the several offenses therein defined, that "in addition to such fine, shall forfeit his license and shall not again be allowed to obtain a license to keep a dramshop for a term of two years thereafter," that therefore the circuit court had jurisdiction to proceed in matters for the revocation of dramshop licenses and that the appeal thereto should be allowed in this proceeding. It will be observed that the statutes mentioned do not authorize nor do they attempt to authorize a proceeding in the circuit court for the mere purpose of revoking a license. These sections define numerous offenses against the dramshop law, such as selling liquor to habitual drunkards, permitting games to be played in a dramshop or permitting musical instruments to be performed upon therein and provide that the person convicted thereunder shall pay a fine as a penalty for the offense "and in addition to such fine, shall forfeit his license."etc. This is an element of the penalty for the violation of the statute. The statutes do not authorize the proceeding for the purpose of seeking the forfeiture of a license. The proceeding in that case is to convict the accused of a violation of the statute specified, and upon his being convicted, the conviction of itself, *ipso facto,* forfeits his license. There is not even a provision that the court shall enter up a judgment to the effect that the license be forfeited and that defendant shall not again be licensed for two years thereafter. The statute is to the effect that if the dramshop keeper is convicted, he shall suffer a certain penalty and in addition, shall forfeit, etc. There is nothing in these sections which confer jurisdiction upon the circuit court to proceed in a matter which has no other purpose than to inquire and ascertain whether or not a dramshop keeper has at all times kept an orderly house and to exercise the police powers by forfeiting his license if it be found that he has not. This statute itself is part and

parcel of the license of the dramshop keeper just as much so as if it were copied and incorporated therein and when the licensee accepted the licenses from the county court, he accepted it with these statutory conditions engrafted thereon. Higgins v. Talty, 157 Mo. 280. And in the event of his conviction in the circuit court, his license would forfeit by virtue of acceptance of the license, subject to this wholesome regulation.

Our conclusion is that the county court in revoking the license of appellant, acted in an administrative and ministerial capacity as the agent of the State, exercising the police powers thereof to the end that the business otherwise unlawful, should not be conducted in a manner contrary to the permit theretofore by it granted and that the proceeding contemplated by section 3012 which was had in this case by the county court is in no sense judicial for the reason that no right of life, liberty or property was therein involved nor adjudicated and that there was therefore no case or cause pending in the county court as is contemplated by the statute granting appeal therefrom to the circuit court. The judgment is therefore affirmed. All concur.