THE STATE OF MISSOURI at the Relation of ARTHUR N. CARMAN, Relator, v. J. C. ROSS, PERRY BROCK, and J. F. LEE, Justices of Jasper County Court, Respondents.

Springfield Court of Appeals, January 19, 1914.

1. **DRAMSHOP KEEPER: License: Illegal Revocation of: Remedy.** *Certiorari* is the proper and only remedy available to a drampshop keeper whose license has been illegally revoked by the county court.

2. **CERTIORARI: Reviewing Proceedings in County Court: What Subject to Review.** The writ of *certiorari* to review proceedings in the county court brings up for review nothing but the record of that court. It does not bring up for review the evidence on which the county court acted nor can the court of review hear other evidence.

3. ———: **Reviewing Proceedings in Inferior Courts: Object of Writ.** The sole office of the writ of *certiorari* when used to review proceedings in the county court is to determine whether or not the county court acted within its jurisdiction.

4. **INTOXICATING LIQUORS: License to Sell: Not a Contract or Right of Property.** A license to sell intoxicating liquors is neither a contract nor a right of property within the legal or constitutional meaning of those terms. It is merely a temporary permit to do that which would otherwise be unlawful and forms a part of the internal police system of the State.

5. ———: ———: **Authority Granting Retains Power to Revoke.** The authority which grants the power to sell intoxicating liquors always retains the power to revoke it, either for cause of forfeiture or upon a change of policy and legislation in regard to the liquor traffic.

6. ————: Revocation of License to Sell: Not Unconstitutional. A revocation of a license to sell liquors is not unconstitutional either as impairing the obligation of a contract or as unlawfully divesting a person of property rights.

7. CERTIORARI: Reviewing County Court's Revocation of Liquor License: What Considered. Where charges are preferred against a dramshop keeper before a county court for the purpose of revoking his license, as the county court acts judicially only in determining its own jurisdiction to act on the charges preferred, it is only this determination of its own jurisdiction that is subject to review on *certiorari*, the review by that writ not comprehending merely ministerial acts.

8. INTOXICATING LIQUORS: Licenses: Revocation by County Court: Ministerial Act: Investigation, not a Trial. In the revocation of a license to sell intoxicating liquors, a county court acts ministerially and not judicially and the proceeding is an investigation rather than a trial.

9. DRAMSHOP LICENSES: County Court's Authority to Revoke: Statutory. The jurisdiction of a county court over the subject-matter of revoking dramshop licenses for failure to keep an orderly house is fixed by statute. [Citing Sec. 7218, R. S. 1909.]

10. ————: Revoking Liquor Licenses: Need not Make Specific Findings. In a proceeding before a county court under Sec. 7218, R. S. 1909, to revoke a dramshop license, it is not necessary that the county court make any specific findings of fact. A general finding that relator was conducting a disorderly house is sufficient and must stand unless the specific findings upon which it is based contradicted or did not support it.

11. CERTIORARI: Jurisdiction of Inferior Court: Sufficient Showing. In *certiorari* proceedings it is sufficient that the jurisdiction of the inferior tribunal, with which alone the review court has to do, appears by any part of the record.

12. DRAMSHOP LICENSES: Proceedings to Revoke: Before County Court: Technical Pleadings not Necessary. In a proceeding before a county court to revoke a dramshop license under the provisions of Sec. 7218, R. S. 1909, while the charges preferred must be in writing, yet, since the proceeding is an investigation and not a trial, the technical rules governing pleadings do not apply.

13. ————: Revocation: No Right to Trial by Jury. Relator is not entitled to a trial by jury in a proceeding to revoke a dramshop license before a county court.

14. INTOXICATING LIQUORS: Dramshops: Orderly House: Expression Considered. The expressions "orderly" and "dis-

orderly" house as used in Sec. 7218, R. S. 1909, defined and considered.

15. **DRAMSHOP LICENSE: Proceedings to Revoke: Sufficiency of Complaint.** A complaint under Sec. 7218, R. S. 1909, charging generally that a dramshop keeper had not at all times kept an orderly house. had sold liquors on Sunday, had so conducted his place as to promote immorality and violations of the law, is sufficiently specific in a proceeding before a county court for the purpose of revoking a dramshop license.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*R. H. Davis* for relator.

(1) *Certiorari* will lie to review the action of the county courts in all cases or proceedings in which an appeal or writ of error will not lie, and in which the court has proceeded without jurisdiction, or has exceeded its jurisdiction. State ex rel. v. Shelton, 154 Mo. 693; State ex rel. v. Lichta, 130 Mo. App. 284; State ex rel. v. Dykeman, 154 Mo. App. 416; 4 Ency. Pl. & Pr. 10, 94. (2) The application of the prosecuting attorney to revoke relator's license does not state facts sufficient to constitute his dramshop a disorderly house. State ex rel. v. Lichta, 130 Mo. App. 284; State ex rel. v. Dykeman, 154 Mo. App. 416. (3) If it should be held that the application of the prosecuting attorney pleads facts sufficient to constitute the dramshop of relator a disorderly house, then it was the duty of the court to set out specifically, in its order revoking relator's license, the facts found and upon which the order was based. State ex rel. v. Wurderman, 158 S. W. 436.

No brief for respondents.

STURGIS, J.—This is a proceeding in the circuit court by *certiorari* having for its object the annulment

of an order of the county court of Jasper county, Missouri, revoking the license of relator as a dramshop keeper in Joplin. The proceeding in the county court was instituted and prosecuted by the prosecuting attorney of that county under the provisions of section 7218, Revised Statutes 1909, for the purpose of having relator's license revoked on the ground of his having failed to keep at all times an orderly house. We regret that no brief on behalf of respondents has been filed here as an aid to this court.

The statute, which is the basis of this proceeding, reads as follows: "Whenever it shall be shown to the county court, upon the application of any person, that any dramshop keeper of the county has not at all times kept an orderly house, such court shall order the license of such dramshop keeper to be revoked, and from the date of such order the dramshop keeper shall be deemed to have no license, and to be without the authority to act as a dramshop keeper; but the dramshop keeper shall be notified, in writing, of such application, five days before the order shall be made, and costs shall be awarded against the losing party. [R. S. 1899, sec. 3012.]"

The amended complaint filed by the prosecuting attorney charges: "That the said Arthur N. Carman as such licensee has not complied with the laws of the State of Missouri in the conduct and operation of said dramshop, but that he has violated the laws of said State and particularly section 7218 of the Revised Statutes of 1909 of Missouri in this: That he has not at all times kept an orderly house in the conduct and operation of said dramshop as provided in said section 7218; that he has sold and permitted to be drunk in and about said dramshop, intoxicating liquors on the first day of the week, commonly called Sunday; that on the 2nd day of February, 1913, said 2nd day of February having been the first day of the week commonly called Sunday, and divers other Sundays pre-

vious to said 2nd day of February, 1913, he permitted intoxicating liquors to be sold and drunk in and about said dramshop; that on said 2nd day of February, 1913, and said divers other Sundays aforesaid, and on divers other days and times, he so conducted his dramshop in such manner as to attract idle, vicious, dissolute and immoral persons, and in such manner as to promote violations of the law and to promote immorality. That the said Arthur N. Carman has not given the business of the aforesaid dramshop his personal attention and supervision, but he, the said Arthur N. Carman, has been engaged in a different line of business at a location other than the location of the said dramshop; that during all of the time aforesaid, one Lon Wilkerson, and one ——— Hopper, by and with the consent of the said Carman have conducted the business of said dramshop. That the said Wilkerson and Hopper, by and with the consent of the said Carman, as aforesaid, have conducted said dramshop in a manner tending to promote immorality, violations of the law and breaches of the peace, at the times and places as above set out.'' Due notice was given relator and he appeared at the hearing. The county court heard evidence and, on due investigation, made and entered its finding that said relator ''as such dramshop keeper has been since the granting of said license conducting a disorderly house at said place above described,'' and entered its order revoking his license. The circuit court upheld the action of the county court and refused to quash its order.

It is conceded that *certiorari* is the proper and only remedy available to a dramshop keeper whose license has been illegally revoked by the county court. [State ex rel. v. Shelton, 154 Mo. 670, 693, 55 S. W. 1008; State ex rel. v. Lichta, 130 Mo. App. 284, 109 S. W. 825; State ex rel. v. Dykeman, 153 Mo. App. 416, 134 S. W. 120.]

This writ brings up for review nothing but the record of the inferior court and the court of review considers nothing else. The proceeding must stand or fall on that record. The writ does not bring up for review the evidence on which the county court acted nor can the court of review hear other evidence. [Ward v. Board of Equalization, 135 Mo. 309, 36 S. W. 648; State ex rel. v. Walbridge, 62 Mo. App. 162; State ex rel. v. Reynolds, 190 Mo. 578, 588, 89 S. W. 877; State ex rel. v. Mayor of Neosho, 57 Mo. App. 192.] With the sufficiency of the evidence heard by the county court to sustain the charges made neither the circuit court nor this court has anything to do. That matter has wisely been left to the sole determination of the same tribunal which granted the license in the first instance.

The sole office of the *writ of certiorari* is to determine whether or not the county court has acted within its jurisdiction, that is, has not acted without any jurisdiction or in excess of its jurisdiction. [State ex rel. v. Smith, 176 Mo. 99, 100, 75 S. W. 586; State ex rel. v. Reynolds, 190 Mo. 578, 588, 89 S. W. 877; State ex rel. v. Shelton, 154 Mo. 670, 691, 55 S. W. 1008; State ex rel. v. Dykeman, 153 Mo. App. 416, 418, 134 S. W. 120.] It is also held, following Black on Intoxicating Liquors, that: "A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional meaning of those terms. It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State. Hence the authority which granted the license always retains the power to revoke it, either for cause of forfeiture, or upon a change of policy and legislation in regard to the liquor traffic. And such revocation cannot be pronounced unconstitutional, either as an impairment of contract obligation, or as unlawfully divesting persons of their property or rights." [State ex rel. v.

Lichta, 130 Mo. App. 284, 289, 109 S. W. 825; Barnett v. County Court, 111 Mo. App. 693, 86 S. W. 575.]

*Certiorari* does not reach mere ministerial acts, and, as it is held that it is only in determining its own jurisdiction to act on the charges preferred that the county court acts judicially, it is only this determination of its own jurisdiction that is subject to review on *certiorari*. [State ex rel. v. Lichta, 130 Mo. App. 284, 289, 291, 109 S. W. 825; State ex rel. v. Elkin, 130 Mo. 90, 30 S. W. 333, 31 S. W. 1037; Barnett v. County Court, 111 Mo. App. 693, 701, 706, 86 S. W. 575; State v. Seebold, 192 Mo. 720, 728, 91 S. W. 491.] That the county court acted ministerially and not judicially and that the proceeding is an investigation rather than a trial is important as bearing on the question of the sufficiency of the charges made and of the order of that court revoking the license, to be discussed later.

The county court in this case determined that the charges preferred against relator were sufficient to give it jurisdiction to act in the matter and that was the sole question before the circuit court granting the *writ of certiorari* and of this court in reviewing by appeal the action of the circuit court in upholding the jurisdiction of the county court. The jurisdiction of the county court over the subject-matter of revoking dramshop licenses for failure to keep an orderly house is fixed by statute, section 7218, Revised Statutes 1909, supra. The relator, however, challenges the jurisdiction of that court in this particular proceeding on two grounds: First, that the application of the prosecuting attorney to revoke relator's license does not state facts sufficient to constitute his dramshop a disorderly house; second, that if it should be held that the application of the prosecuting attorney pleads facts sufficient to constitute the dramshop of relator a disorderly house, then it was the duty of the court to set out specifically, in its order revoking relator's

license, the facts found and upon which the order was based.

This last contention is fully disposed of by this court in State ex rel. v. Dykeman, 153 Mo. App. 416, 423, 134 S. W. 120, where the court said: "It was not necessary that the court should have made any specific finding of facts. A general finding that relators were conducting a disorderly house would have been sufficient, and since this general finding was made it must stand unless the specific findings upon which it is based contradict it, or are insufficient to support it." This follows the general practice, even in the *trial of cases* in courts of record, where a general verdict and judgment for one of the parties is sufficient without a finding or setting out in the record of the particular facts on which the verdict and judgment is based. It has also been ruled that it is sufficient in *certiorari* proceedings that the jurisdiction of the inferior tribunal, with which alone the review court has to deal, appears by any part of the record. [State v. Schneider, 47 Mo. App. 669, 676; State ex rel. v. Mayor of Neosho, 57 Mo. App. 192, 198.]

The whole case, therefore, turns on the question of the sufficiency of the charges made against relator to warrant the county court in acting on the same; for, if it had power to act at all on the charges preferred, its order revoking the license is immune from attack in this proceeding. While it is fair to hold that the charges preferred must be in writing, so as to inform the party proceeded against as to the nature of the proceeding and afford him an opportunity to be heard, yet, the county court is not trying a case and should not be hampered by the technical rules governing pleadings or proceedings in trial courts. The proceeding is an informal and summary investigation rather than a trial. It is said in Black on Intoxicating Liquors, sec. 194, that: "The proceeding may be summary and the authorities are not required to take the

formal proceedings essential to form a basis of a
judicial decision affecting life, liberty or property.
Nor is this the species of proceeding in which the de-
fendant is entitled as a matter of constitutional right,
to a trial by jury.'' This is quoted with approval in
Barnett v. County Court, 111 Mo. App. 693, 704, 86 S.
W. 575. It has often been held and is the settled law
of this State that the sale of intoxicating liquors is
unlawful because of its tendency to deprave public
morals. Licenses to sell intoxicants, when issued, are
merely permits to do what would otherwise be unlaw-
ful and are always subject to the police power of the
State by reason of the tendency of the business to
deprave public morals and are subject to be revoked at
any time by the power granting the same for a viola-
tion of the statutes enacted for the regulation of the
sale of intoxicating liquors under such licenses. Much
must be and should be left to the good sense and dis-
cretion of the county court, whose position makes it
the proper tribunal to deal with such matters. It de-
termines the unfitness of a man to further hold the
license because of running a disorderly house much in
the same way as it determines his fitness as a ''law-
abiding citizen'' to have the license in the first in-
stance. The law on this point is well stated and sup-
ported by the authorities cited in State ex rel. v.
Dykeman, 153 Mo. App. 416, 419, 134 S. W. 120, as fol-
lows: ''No form of procedure is provided except that
five days' notice of the hearing must be given the
accused. In the hearing the county court merely con-
ducts an investigation for the purpose of satisfying
their own judgment as to whether or not the licensee
has kept a disorderly house and is in no sense conduct-
ing a judicial trial. [Higgins v. Talty, 157 Mo. 280, 57
S. W. 724.] The proceedings, therefore, are not re-
quired to be as formal and exact as would be the case
in a judicial trial involving interference with life,
liberty, or property. [Barnett v. County Court, 111

Mo. App. 688, 703, 86 S. W. 575.]  All that is required is that the record shall show that the court acted within its authority.''

The statute is so worded as to give the county court large powers in this regard.  It is given power to revoke a dramshop license whenever it is shown that the holder thereof ''has not *at all times* kept an orderly house.''  The term ''orderly house'' is one of broad meaning, as will be seen from the definitions collected by the learned judge who wrote the opinion in the Dykeman case just quoted from.  Those definitions need not be repeated here but will be found to include all acts which ''annoy or scandalize the public,'' ''are contrary to law and subversive of public morals,'' ''draws together idle, vicious, dissolute or immoral persons,'' or ''the young and unwary into it to indulge in or witness anything corrupting,'' etc.  A disorderly house as applied to a dramshop must, of course, be understood to mean something more than permitting the evils or allowing the doing of those things tending to immorality which necessarily flow from selling and drinking intoxicants; otherwise, the doing of the very thing which the license permits the dramshop keeper to do, to-wit, the selling of intoxicants to, and the drinking of the same by, customers, would, of itself, constitute the same a disorderly house.  The law does require however, that the dramshop be so conducted and controlled as to a reasonable extent, at least, minimize such evils and tendency to immorality.  Our statutes have wisely prohibited certain things having an obvious tendency to increase the evils attending dramshops; as for instance, the selling of intoxicating liquors to minors, permitting minors to enter and remain in dramshops, keeping the same open on Sundays and election days, selling to habitual drunkards, keeping musical instruments therein, or permitting games of chance or gaming tables, boxing or wrestling matches, keeping the same open at cer-

tain hours of the night, running same in buildings used for or connected with a place used for immoral purposes, or near schools or churches, etc. The observance of all these regulations is necessary to the keeping of an orderly house. The definition of "orderly," as given by Webster, includes "observant of authority, obedient, quiet, not unruly." What is orderly never runs counter to law. The term "orderly" carries with it the idea of restraint and suppression of wrongdoing, not its permission or encouragement.

Several of the things charged against the relator are clearly within the definitions of "disorderly house" above given, as well as being a direct violation of the statutes governing dramshops. It is true that the court in State ex rel. v. Lichta, 130 Mo. App. 284, 109 S. W. 825, held that a single violation of the law in selling to minors would not constitute a disorderly house, because the term disorderly implies successive and continuing acts (State ex rel. v. Dykeman, 153 Mo. App. 416, 421, 134 S. W. 120), but the court significantly remarked: "Open, repeated and continuous sales of intoxicating liquors to minors to the annoyance and disturbance of the inhabitants of the vicinity, might come within the legal definition of a disorderly house"—and that is practically what is charged here with reference to selling on Sunday. The court also cited in that case the case of Commonwealth v. Bessler, 97 Ky. 498, holding that it would be a good *indictment* for keeping a disorderly house to use words showing a repetition of improper conduct "on divers other days and times." It certainly comes within the definition of a disorderly house to charge and prove that the keeper "conducted his dramshop in such manner as to attract idle, vicious, dissolute and immoral persons, and in such manner as to promote violations of the law and to promote immorality." So too of the charge that relator left his saloon entirely to the management of two other persons, naming them, who

"have conducted said dramshop in a manner tending to promote immorality, violations of the law and breaches of the peace." Our statutes forbid the assignment of licenses and make the dramshop keeper responsible for the acts of his clerks.

The relator claims that these charges are, in part at least, too general and are mere conclusions. That might be a fatal objection were this proceeding a trial instead of a mere investigation resulting in a mere ministerial act. These charges are not near so general as the statute and are, we think, sufficiently specific for the purposes of such an investigation as the statute authorizes and contemplates. It results that the action of the circuit court in refusing to quash the order of the county court is sustained.

*Farrington, J.,* concurs. *Robertson, P. J.,* concurs, except that he expresses no opinion as to the holding that the county court acts ministerially and not judicially in revoking dramshop licenses under section 7218, Revised Statutes 1909.