# SUPERIOR COURT OF BALTIMORE CITY.

Filed April 2, 1918.

ANTHONY PESSAGNO
VS.
WILLIAM PEPPER CONSTABLE, GEORGE L. RADCLIFFE AND DR. GEORGE HELLER, CONSTITUTING THE BOARD OF LIQUOR LICENSE COMMISSIONERS FOR BALTIMORE CITY.

*John L. Sanford* and *W. Purnell Hall* for petitioner.

*Ogle Marbury*, Assistant Attorney General, for the Board of Liquor License Commissioners.

*George Weems Williams* for William Pepper Constable, individually.

HEUISLER, J.

On February 19, 1918, a petition was filed by the above-named Anthony Pessagno asking that the court issue its writ of certiorari directed to the Board of Liquor License Commissioners and commanding it to transmit to the court all the papers and proceedings in said petition set out and stated, in order that the regularity of the proceedings of said board in the said proceedings might be inquired into; and that such other and further relief might be had for the petitioner as his case might require. On the same day the court ordered that the writ issue as prayed, and pursuant to said order and on March 1st, 1918, return was made by the said board, and the papers and proceedings were then duly filed in this court. On March 1, 1918, a motion to quash the said writ was filed by the defendant, the Board of Liquor License Commissioners; and at the same time another motion to quash the writ was filed, individually, by William Pepper Constable; the reasons assigned in both motions being the same. On March 7, 1918, a motion of ne recipiatur as to the above-recited individual motion of William Pepper Constable and a request that same be stricken from the files, was filed by the petitioner upon the allegation that there was no sanction in law for such a motion. The motion of the board was filed by the Attorney General of Maryland and his assistant; the individual motion of Constable was filed by other counsel representing him, and it was urged that the appearance in this proceeding of counsel other than the Attorney General or his assistants, was violative of the provisions of the Acts of Assembly of Maryland of 1916, Chapter 560, Sections 2 and 3, and it was further urged that no individual member of the board was legally entitled to file an individual motion. 2 Poe, Pleading and Practice, Sec. 730, at folio 829, says: "Usually the party injuriously affected by the removal of the record under the certiorari raises the question by a motion to quash the writ." An inspection of the record justifies the conclusion that the motion of ne recipiatur and to strike from the files the individual motion of William Pepper Constable, for the reasons stated, cannot be entertained, and said motion is accordingly overruled.

The record in this case is exceedingly voluminous and much time was necessary for the critical and detailed examination which it has had.

Pessagno, in his petition for the writ, alleges: "That he is entitled by law to specific, definite and certain charges," and that those as filed are not such as he should be required to answer; and that by forcing him to stand trial he is "being deprived of his constitutional rights in that he is being deprived of his property without due process of law." That he is entitled to a fair and impartial hearing; that William Pepper Constable, the president of the

board, has undertaken to act as (a) detective in said case (he, Constable, admitting that he directed efforts to get testimony) ; (b) prosecuting witness in said case, (c) witness in said case (in that he stated, "I am the last witness in the case in presenting the testimony *in support of the charges*") ; (d) prosecuting attorney in said case (especially his statement, "No power in Baltimore has been able to get testimony on Pessagno's place. There have been communications to the Police Department and reports have come back : 'Not able to get him; no information against him.' I made up my mind to see if I could not find out something") ; (e) judge in said case (in that after testifying he returned to his seat to sit in final judgment on the hearing).

Summarized, the claims of the petitioner are :

a. That he is entitled to specific, definite and certain charges.

b. That he is deprived of constitutional rights in being deprived of his property without due process of law.

c. That he is entitled to a fair and impartial hearing.

d. That he is prejudiced by the illegal and improper activities of an individual member of the Liquor License Board.

Before proceeding to a further examination of these claims, it should be stated that the object of the writ of certiorari and the extent of this court's jurisdiction in the premises is thus set out in the case of Riggs vs. Green, 118 Md. 226 : "The office of the writ is twofold—first, to test the jurisdiction of the inferior tribunal; secondly, to require it to adopt a legal and regular course of procedure in the conduct of the judicial proceeding in which it may be engaged, i. e., *to follow the form of procedure legally applicable to the case.* In either case the general rule is that the court from which the certiorari issues, in reviewing the proceedings of the inferior tribunal does not try the merits of the case, unless authorized by statute to do so, but confines itself to determining whether the inferior tribunal has jurisdiction, and has adopted and followed the regular or legal procedure. Mr. Poe, in his work on Pleading and Practice, 2nd Vol., Sec. 724, states : "That the object of the writ is not to authorize the court issuing it to take cognizance of the case and to de-

cide it on its merits, but simply *to enquire whether the inferior court is proceeding within the just limits of its authority and jurisdiction.*" And in Corpus Juris, Vol. 11, folio 199, it is said : "Except where otherwise prescribed by statute or authorized by practice, *it is the general rule* that in ascertaining whether or not the inferior court or tribunal had jurisdiction and proceeded regularly in making the determination complained of, the reviewing court is confined to the consideration of the record, returned in obedience to the writ, by which the error, if any, must appear."

Fundamentally, then, it is the duty of this court to enquire whether the inferior tribunal is proceeding within the just limits of its authority and jurisdiction, and to pursue that enquiry in the consideration of the record.

The record in this case shows that it is an incomplete and suspended proceeding begun *for the purpose of hearing charges* made against Pessagno, *touching the revocation* of a license to sell intoxicating liquors or spirituous or fermenting liquors, already issued by the board to Pessagno. Examining the law creating the Board of Liquor License Commissioners of Baltimore City, at Sec. 676 of 1890, Ch. 343, we find, inter alia, the following words : *"If sufficient cause shall at any time be shown or proof be made to the said board that the party licensed was guilty of any fraud in procuring such license or has violated any law of the State relating to the sale of intoxicating liquor the said board shall, after giving notice to the person so licensed, revoke said license"; and further on, at Sec. 685 of 1890, Ch. 343, we find, inter alia, the following : "The license of any person who permits minors to frequent or loiter around his place, or disreputable or disorderly persons to make it a customary place of visitation or resort may be at any time, upon proof, revoked by the Criminal Court of Baltimore City or by said board."*

These two sections constitute the authority and jurisdiction conferred by law upon the board touching the matter of revocation of license.

It appears from the record that the following charges were preferred against the petitioner, Anthony Pessagno :

1. For allowing, suffering or permitting disreputable or disorderly persons to make the licensed premises a customary place of visitation or resort.

2. For allowing, suffering or permitting minors to frequent or loiter around the licensed premises.

3. For fraud in procuring his license.

4. For false statements made under oath in his petition applying for a license, in that he sold or allowed to be sold liquor to minors or allowed minors to drink in said licensed house or on said licensed premises.

5. For a false statement made under oath in his petition applying for a license, in that he has kept or permitted to be kept a bawdy house in said licensed house or on the said licensed premises.

6. For a false statement made under oath in his petition applying for a license, in that he has allowed, suffered or permitted in the gathering together or the visitation to the said licensed house or on said licensed premises of women for lewd or immoral purposes.

It appears from the record that Pessagno had notice of these charges, and also that a hearing was in progress and that testimony had been submitted touching the same.

It is objected in the petition for the writ—

"a. That he is entitled to specific, definite and certain charges," and, granting that contention, it is clear that the charges as set out are specific, definite and certain, phrased indeed at times in the very verbiage of the law itself, and if followed "by proof" or if held to be "sufficient cause," as by the law provided, this record of the proceedings as to the charges shows the board to be within the just limits of its authority and jurisdiction.

It is further urged by the petitioner that—

"6. He is deprived of constitutional rights in being deprived of his property without due process of law."

This contention is legally erroneous, and the error is in the failure to distinguish between the ownership and property in spirits and distilled liquors, *the thing itself*, and the right to use them as such property. "Ardent spirits, distilled liquors, ale and beer are subjects of exchange, barter and traffic like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of Congress and the decisions of courts." Leisy vs. Harden, 135 U. S. 110. And Chief Justice Taney, in the "License Cases," 5 How. 557, says: "Spirits and distilled liquors are universally admitted to be subjects of ownership and property, and are, therefore, subjects of exchange, barter and traffic, like any other commodity in which a right of property exists * * * and inasmuch as the laws of Congress authorize their importation, no State has a right to prohibit their introduction"; but, "upon the article after it has passed the line of foreign commerce and become a part of the general mass of property in the State," then "the retail or domestic traffic within their respective borders, becomes and is altogether subject to the State laws." "These laws," the Chief Justice, continuing, says, "may indeed discourage imports and diminish the price which ardent spirits would otherwise bring. But although a State is bound to receive and to permit the sale by the importer of any article of merchandise which Congress authorizes to be imported, it is not bound to furnish a market for it, not to abstain from the passage of any law which it may deem necessary or advisable to guard the health or morals of its citizens, although such law may discourage importation or diminish the profits of the importer or lessen the revenue of the general government. And if any State deems the retail and internal traffic in ardent spirits injurious to its citizens and calculated to produce idleness, vice or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating or restraining the traffic or from prohibiting it altogether if it thinks proper." "The right to sell intoxicating liquors is not a privilege of a citizen of the State or a citizen of the United States; it is a business attended with danger to the community and may be entirely prohibited or permitted under such regulations as will limit to the utmost evils, and the manner and extent of such regulation rests wholly in the discretion of the legislature," is the nisi-prius pronouncement of Dennis, J., in the case of Margaret Childs vs. Levi S. White et al., reported in The Daily Record of December 16, 1890, a short time after the pass-

age of the law now under examination, and that learned judge in the course of his opinion, referring to the case of Tragesser vs. Gray, 73 Md. 250, quotes from the opinion of Bryan, J., in that case as follows: "Their power over the whole subject under the Constitution cannot be questioned. They may prohibit the sale of spirituous liquors entirely if they see fit to do so; or they may restrict it in any manner which their discretion may dictate. No one can claim as a right the power to sell either at any time, at any place or in any quantity. If he is allowed to sell liquor under any circumstances it is simply by the free permission of the legislature and upon such terms as it may see fit to impose."

In the case of Metropolitan Board of Excise vs. Barrie, reported in 34 New York at folio 657, it was held that licenses to sell liquors are not contracts between the State and the persons licensed, giving the latter vested rights protected by the Constitution; nor are they property in any legal or constitutional sense; they have neither the qualities of a contract nor of property, but are merely temporary permits to do what would otherwise be an offense against the general law."

The conclusion of the court in the case now under consideration is that the license to sell liquor heretofore issued to the petitioner, Pessagno, is only a mere permit, granted in the exercise of the general police powers of the State to carry on an occupation under such regulations and subject to the revocation in such manner as the power granting the same may see fit, by legislative enactment, to provide.

So long as the proceeding for such granting, refusing or revocation conforms to legislative requirements, it cannot properly be questioned in any tribunal as a violation of constitutional rights.

The record shows that the proceedings do conform to legislative requirements, and because of the entire absence in this case of the constitutional rights asserted in the petition, the claim of the petitioner in that respect will be denied.

The claim that the "Board of Liquor License Commissioners of Baltimore City" is by the verbiage and true meaning of the legislative enactment made a judicial body; and that by reason of the "illegal and improper activities of an individual member of the said board" (as set out in the record) the said member is legally disqualified from further participation in the hearing now in progress, seems to be the main grievance of the petition. That claim, more briefly stated, is this: The president of the board is disqualified to further sit in this hearing because of his activities, prejudgments and prejudices apparent from the record, and if he continues to sit with the board in further hearing, the action of the board, when reached, will be null and void.

This claim is made by reason of the following section of Article 4 of the Constitution of Maryland:

"SEC. 7. No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity within such degrees as now are or may hereafter be prescribed by law, or where he shall have been of counsel in the case."

The disqualification of Constable, under this section, is urged because (as shown by the record) *he is interested in the case,* and has acted practically as prosecuting counsel in the case, and had been theretofore *"of counsel in the case."*

The record shows that Constable himself had drawn the complaint and prepared the charges upon which the hearing was proceeding; that he had gathered information by a personal visit to the licensed premises; that he had made up his mind to see if he could not find out something, and that he had, as a witness, detailed before the board the said personal information.

This alleged disqualification depends upon one finding, and that is, what is this Board of Liquor License Commissioners of Baltimore City? Is it *a judicial tribunal* or an *administrative board* to carry out the provisions of the liquor license law according to the intention of the legislature?

"Judicial power is the authority vested in some court, officer or person, to hear and determine when the rights of persons or property or the propriety of doing an act are the subject-matter of adjudication. Official action the result of judgment or discretion is a judicial act. The duty is ministerial when the law exacting the discharge pre-

scribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act." Grider vs. Tally, 77 Ala. 422 (1884).

Apply the verbiage of our statute to this pronouncement: Sec. 676, inter alia, "if sufficient cause shall at any time be shown or proof be made to the said board that the party licensed was guilty of any fraud in procuring such license or has violated any law of the State relating to the sale of intoxicating liquor *the said board shall*, after giving notice to the person so licensed, *revoke said license*"; Sec. 685, inter alia, "the license of any person who permits minors to frequent or loiter about his place, or disreputable or disorderly persons to make it a customary place of visitation or resort, may be at any time *upon proof* revoked by * * * said board."

The "official action" of the board, under Section 676, i. e., the revocation of the license for "violation of any law of the State relating to the sale of intoxicating liquors," and those general laws forbid the specific offenses set out in Section 685, *is mandatory* and requires the performance of a certain and specific duty arising from fixed and designated facts, *and is a ministerial act only.*

In construing a similar statute in Missouri, the court in the case of State vs. Ross, 177 Mo. App. 231, said: "Much must be and should be left to the good sense and discretion of the county court, whose position makes it the proper tribunal to deal with such matters. It determines the unfitness of a man to further hold the license, if running a disorderly house, much in the same way as it determines his fitness as a law-abiding citizen to have the license in the first instance. The law on this point is well stated and supported by the authorities cited in State vs. Dykeman, 153 Mo. App. 416, as follows: No form of procedure is provided except that five days' notice of the hearing must be given the accused. In the hearing the county court merely conducts an investigation for the purpose of satisfying their own judgment as to whether or not the licensee has kept a disorderly house *and is in no sense conducting a judicial trial.* The

proceedings, therefore, are not required to be as formal and exact as would be the case in a *trial involving* interference with *life, liberty* or *property.*"

It should be noted that the county court referred to in this case, and to which by the Missouri State the revocation of liquor licenses was committed, was intrinsically a "judicial tribunal" and notwithstanding it was held by the court dealing with the writ that the county court was not bound, in this particular character of hearing by its ordinary rules of procedure, the purpose of that proceeding not being to determine and adjudicate property or personal rights, but merely to satisfy the judgment of the court as to whether the licensee had conducted a disorderly house and should for that reason have his license revoked.

The case of Baldacchi vs. Goodlet, notary public, and W. P. Lane, Comptroller, 145 Southwestern Rep. 329 (Court of Appeals of Texas), is illustrative of this examination and the administrative official therein referred to had gone to much further lengths than is disclosed by the record in this case. This was a suit for an injunction by the appellants, who were retail liquor dealers, to restrain the comptroller from an attempted forfeiture of their license, because he was acting in a judicial capacity as such comptroller, and was disqualified from proceeding for the revocation of the liquor license *because he had expressed an opinion by publicly declaring that on the receipt of depositions to be taken he would forfeit the license.*

The court held that he was acting only in an administrative capacity and that he was not disqualified from proceeding for the revocation of the license and discussing the Texas statute which is very similar to the one in force locally, said, "the proceeding being ministerial there is no adjudication of the guilt or innocence of a liquor dealer in any judicial sense. The inquiry by the comptroller into the charge made against the liquor dealer is only for the purpose of determining whether he is authorized to perform the ministerial act of revoking the license, and the question of the guilt or innocence of the dealer is only incidental to the facts which authorize revocation. This inquiry is not made without notice to the dealer, and opportunity to him to offer evidence in

his own behalf. *The proceeding not being judicial, no rules of procedure are required to be provided, such as are necessary in judicial investigation.* The court, continuing, says, "The only remaining question is the contention that the injunction should have been granted because the evidence shows that the comptroller was disqualified from passing upon the evidence and determining whether appellants' licenses should be revoked, * * * it was shown that the comptroller had been very active and earnest in his efforts to discover whether there had been violation of the liquor law by the Galveston saloon men. That upon receiving reports from his employes whom he had sent to Galveston for the purpose of ascertaining whether there had been such violation of the law, he had publicly expressed the opinion that there had been such violation, and his determination to revoke the licenses of such violators as soon as he could obtain the necessary legal evidence of such violations. He admitted, upon the stand, that he believed the statements made to him by his employes, but he testified that, notwithstanding this, he could and would decide the question of whether the licenses should be revoked according to the preponderance of the credible testimony adduced upon the hearing. We know of no rule by which an administrative officer is disqualified from passing on facts which authorize him to perform a ministerial duty, because of his having expressed an opinion upon such facts before he is called to act upon them. Public expression of this kind on the part of such officer is a matter of taste and temperament, and while there might be a question of propriety involved, there is no question of legal disqualification." * * * "With the expediency or wisdom of a legislative act the courts have no concern. So long as no constitutional right of the citizen is invaded, the rights and powers of the legislature to enact such laws as they deem best for the public welfare cannot be questioned."

"The legislature and the agencies employed in the enactment of laws are independent of judicial interference; and the courts will not review acts which are legislative."

Miller vs. Jones, 80 Ala. 94; Baur vs. Town Council, 99 Atlantic Rep. 11; People vs. Hohghton, 41 Hun. (N. Y.) 560; Appeal of Thomas, 169 Pa. State 111; United States vs. Douglass, 19 D. C. 99.

The law of the above cases is thus summarized in the "Douglass" case, 19 Dist. of Columbia 99: "The interests and wants of the public and not any pre-existing right of the petitioner were the subjects they were charged to ascertain. Their mode of enquiry and satisfying their own judgment were not subject to the rules which apply to the ascertainment of disputed private rights. As no mode of inquiry is prescribed by the statute the commissioners are, by implication, authorized to adopt any that may reasonably be used in attaining the end in view."

The legal doctrine announced in these cases rests upon the conclusion that all manner of persons and courts and boards therein considered charged with the supervision and administration of liquor license statutes are administrative agencies solely and not judicial tribunals, and their application to the statute under consideration would fail in force if any doubt remained as to the statutory character of the board considered in relation to the provisions of Section 7 of Article 4 of the Constitution of Maryland. This Court is satisfied that in the purposes and provisions of the statute itself there can be found but one meaning of the legislative mind; and that was an intention to have the legislative power of control over the serious question of liquor license, so peculiar in its character and so distinctive and dangerous in all the features of its traffic, entrusted to the Board of Liquor License Commissioners of Baltimore City as the administrative agent of the legislature, and it was not its purpose to circumscribe that administrative agent with the strict and formal rules of judicial proceeding and subject its proceedings to the machinery of the courts of justice. "This," as urged by the counsel of the board, "would frustrate and nullify the fundamental purpose and intention of the legislature in creating the board and vesting in them the powers which the law defines." *The disqualification provided for by the Constitution of Maryland* (Const. Art. 4, Sec. 7) *refers only to judges of courts of record or courts of law"; and a judge is not disqualified merely because he has expressed his opinion as to the case."*

County Comm'rs. vs. Wilmer, 101 Atlantic Rep. (Md.) 686.

Both, or either of these pronouncements of the Court of Appeals of Maryland, made on June 27, 1917, must finally dispose of the petitioner's contention as hereinbefore set out, "that he is prejudiced by the *illegal* and improper activities of an individual member of the Liquor License Board."

The remaining contention of the petitioner, "that he is entitled to a fair and impartial hearing," seems to be a "begging of the question" and cannot prevail, for the record shows that the hearing has not been concluded; that, although entitled to do so, petitioner has offered no evidence in his own behalf touching the matter of the charges made against him. and no conclusion has been reached by the board in the matter.

For the reasons and conclusions hereinbefore set out the court is now of opinion that there was no just ground for the issuance of the writ in this case, and an order will be signed quashing the said writ and directing the cause to be remanded to the Board of Liquor License Commissioners of Baltimore City, to be there proceeded with according to law : the costs of this proceeding to be paid by the petitioner, Anthony Pessagno.